*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0302p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JASON YOUNG, et al.,

                *Plaintiffs-Appellees,*

        *v.*

NATIONWIDE MUTUAL INSURANCE
COMPANY, et al.,

                *Defendants-Appellants.*

Nos. 11-5015/ 5016/ 5018/
5019/ 5020

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
Nos. 2:06-cv-141; 2:06-cv-146; 2:10-cv-215; 2:10-cv-216; 2:10-cv-217;
2:10-cv-220; 2:10-cv-221; 2:10-cv-224—David L. Bunning, District Judge.

Argued: April 11, 2012

Decided and Filed:  September 5, 2012

Before:  SUHRHEINRICH, STRANCH, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Drew H. Campbell, BRICKER & ECKLER LLP, Columbus, Ohio, for Appellants.   Gary E. Mason, MASON LLP, Washington, D.C., for Appellees. **ON BRIEF:** Drew H. Campbell, James P. Schuck, Bridget Purdue Riddell, BRICKER & ECKLER LLP, Columbus, Ohio, for Appellants in 11-5015.   Joseph L. Hamilton, Michael D. Risley, Marjorie A. Farris, STITES & HARBISON, PLLC, Louisville, Kentucky, Mark G. Arnzen, ARNZEN MOLLOY & STORM, P.S.C., Covington, Kentucky, for Appellants in 11-5016.   Gerald F. Dusing, ADAMS, STEPNER, WOLTERMANN & DUSING, Covington, Kentucky, Mark A. Johnson, Rand L. McClellan, BAKER & HOSTETLER LLP, Columbus, Ohio, for Appellants in 11-5018. John R. Crockett, III, Jason P. Renzelmann, Cory J. Skolnick, FROST BROWN TODD LLC, Louisville, Kentucky, for Appellants in 11-5019 and 11-5020.  Gary E. Mason, MASON LLP, Washington, D.C., Alexander F. Edmondson, Jason V. Reed, EDMONDSON & ASSOCCIATES, Covington, Kentucky, Christopher S. Nordloh, NORDLOH LAW OFFICE, P.C., Covington, Kentucky, John C. Whitfield, WHITFIELD & COX, P.S.C., Madisonville, Kentucky, for Appellees.

1

STRANCH, J., delivered the opinion of the court in which, DONALD, J., joined., and SUHRHEINRICH, J., joined only in the judgment.

----

**OPINION**

----

JANE B. STRANCH, Circuit Judge.  Defendants, insurance companies doing business in Kentucky, appeal the district court's certification under Federal Rule of Civil Procedure 23(a) and (b)(3) of statewide plaintiff subclasses.  Plaintiffs, insureds of Defendants, allege in this diversity action that they were assessed incorrect charges for local government premium taxes as a result of Defendants' failure to correctly identify the taxing jurisdiction in which the insured risks of each of the policyholders were located.  The district court accepted Plaintiffs' proposed ten subclasses (each comprising of one Defendant company), severed each subclass into a separate action, and certified the subclasses.  Defendants appealed the certification orders and five appeals remain for consideration.  For the following reasons, we **AFFIRM** certification of the subclasses.

**I.  BACKGROUND**

Nationwide Mutual Insurance Company, Kentucky Farm Bureau Mutual Insurance, State Farm Fire and Casualty Insurance, Standard Fire Insurance Company, and Travelers Property Casualty Insurance Company (collectively, the "Defendants") are all insurers that write consumer and commercial insurance in Kentucky.  Kentucky has a unique system of taxation that authorizes local governments to impose a tax on insurers for the premiums the insurer collects on its sale of certain insurance products.  Ky. Rev. Stat. Ann. § 91A.080.  The statute also allows the insurer to charge a "reasonable collection fee" as compensation for collecting the taxes that are remitted to the particular local government authority and most insurers, including all Defendants, pass the tax itself on to the insureds along with the collection fee.  *See* Ky. Rev. Stat. Ann. § 91A.080(4).

The named Plaintiffs in the five subclasses in this appeal—Jason and Diana Young, Matthew Sanning, Robert and Johnna Dyas, and Martha Yunker—are policyholders of their respective subclass Defendant insurers. Each Plaintiff claims that their insurer charged them a local government tax on their premiums when either the tax was not owed or the tax amount owed was less than the insurer billed. Plaintiffs allege that these miscalculations of premium tax obligations were unlawful under various state law causes of action.

In June 2006, Plaintiffs brought their claims in two separate cases filed in Kentucky state court. Both actions were removed to federal court and were considered together for the purpose of class certification. Plaintiffs' claims were ultimately narrowed to illegal dealing in premiums, negligence, conversion, and a declaration of rights; Plaintiffs sought refunds of the amount of improperly charged municipal tax and collection fee as well as injunctive and declaratory relief.

Prior to its final consideration of class certification, the district court considered several motions that are relevant to this appeal. On March 31, 2007, the court denied Defendants' Motions to Dismiss, which alleged that the court lacked jurisdiction because Kentucky law allowed Plaintiffs an administrative remedy, then subsequently granted their request to bifurcate class certification discovery from merits-based discovery. Defendants also unsuccessfully moved to strike Plaintiffs' class allegations contending that the definition would require the court to engage in impermissible individual determinations on the merits of the claims of each putative class member. Finally, on March 31, 2009, the district court denied Defendants' motions in limine to exclude the testimony of Plaintiffs' expert, Paul Manning, on whom Plaintiffs intended to rely to show that Defendants' data was compatible with geocoding software to assist in identifying the proper tax jurisdiction for Defendants' insureds. Prior to entry of its class certification order, the district court also approved several voluntary class settlements between originally named Defendants and their insureds.

On July 10, 2008, Plaintiffs moved for class certification. The district court entered an order on September 30, 2010 subdividing the Plaintiffs into ten subclasses, each comprising one of the remaining ten Defendants, and sua sponte severing the subclasses into separate actions. The district court found the class ascertainable and administratively feasible, the Rule 23(a) prerequisites —numerosity, commonality, typicality and adequacy of representation—met, and the Rule 23(b)(3) requirements—that class litigation is superior and common questions predominate over individuals ones—satisfied. The subclasses, as certified, are each defined as follows:

> All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by [Defendant insurer] during the Relevant Time Period [[June 16, 2001, through the present) for 06-141 and (June 22, 2001, through the present) for 06-146] and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.[1]

Defendants timely appealed, challenging each of the district court's findings. After several voluntary settlements, only five appeals remain before this court.

## II. DISCUSSION

### A.    Standard of Review

The district court has broad discretion to decide whether to certify a class, *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 416 (6th Cir. 2012), and this court reviews class certification for an abuse of discretion, *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 629 (6th Cir. 2011), *cert. denied*, 132 S. Ct. 1757 (2012). A district court's decision to certify a class is subject to "very limited" review and will be reversed only if a strong showing is made

---

[1]Excluded from the class are:

> (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants and their legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

that the district court clearly abused its discretion. *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004). An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment. *Pipefitters Local 636 Ins. Fund*, 654 F.3d at 629. This court should not find an abuse of discretion unless it has a "definite and firm conviction that the trial court committed a clear error of judgment." *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 613 (6th Cir. 2002) (citation and internal quotation marks omitted).

**B.      Class Certification**

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* (citation and internal quotation marks omitted). To be certified, a class must satisfy all four of the Rule 23(a) prerequisites—numerosity, commonality, typicality, and adequate representation—and fall within one of the three types of class actions listed in Rule 23(b). *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc). The party seeking class certification has the burden to prove the Rule 23 certification requirements. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Dukes*, 131 S. Ct. at 2551. Such compliance must be checked through a "rigorous analysis." *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). Meeting the requirements of "Rule 23(a) requires something more than mere repetition of the rule's language; '[t]here must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled.'" *Pipefitters Local 636 Ins. Fund*, 654 F.3d at 629 (citation omitted). Ordinarily, this means the class determination should be predicated

on evidence the parties present concerning the maintainability of the class action. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. *Dukes* verified that the district court should not merely presume that the plaintiffs' allegations in the complaint are true for the purposes of class motion without resolving factual and legal issues. *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012). Nevertheless, it "is not always necessary to probe behind the pleadings before coming to rest on the certification question, because sometimes there may be no disputed factual and legal issues that strongly influence the wisdom of class treatment." *Id.* (alteration, citations, and internal quotation marks omitted).

In laying out the required standard of review, the district court recognized the need to conduct a "rigorous analysis" of the Rule 23 factors and the fact that Plaintiffs carried the burden of establishing those requirements, but erroneously stated that it "must take the substantive allegations of the complaint as true." However, a review of the district court's opinion suggests this erroneous statement of the law was harmless. *See, e.g.*, *Gooch*, 672 F.3d at 418 (finding error harmless even though district court stated it must presume plaintiffs' allegations to be true and only conduct a limited factual inquiry); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011) (finding error harmless where district court stated it presumed plaintiffs' allegations in the complaint to be true). Although the district court stated it would accept Plaintiffs' allegations as true, it is clear from the opinion that the district court based its determination on the evidence submitted by the parties rather than the bare allegations of the complaint.

*1.      Class Definition*

Before a court may certify a class pursuant to Rule 23, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *See* 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997) ("Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the

class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'"); *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). Defendants assert that the proposed definition creates an impermissible "fail-safe" class and is not administratively feasible because it would require the court to resolve merits issues and require a significant number of individual determinations.

All parties concede that a class definition is impermissible where it is a "fail-safe" class, that is, a class that cannot be defined until the case is resolved on its merits. *See Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) ("Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."). The class definition at issue before us includes persons "who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted." Defendants assert that the determination of whether premium taxes were charged that were not owed or were at rates higher than permitted goes to the heart of the claims and impermissibly determines a required element of each claim against them. But a "fail-safe" class is one that includes *only* those who are *entitled* to relief. Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those "class members win or, by virtue of losing, they are not in the class" and are not bound. *Randleman*, 646 F.3d at 352. Such a result is prohibited in large part because it would fail to provide the final resolution of the claims of *all* class members that is envisioned in class action litigation. Plaintiffs' classes will include both those entitled to relief and those not. Defendants' other argument—that they are not ultimately liable for many of the class members, even if they were incorrectly charged—proves the point. This is not a proscribed fail-safe class.

Defendants also assert that the class definition is not administratively feasible because it requires impermissible merits inquiries. Defendants' argument is less a question of violating the limitation on merits inquiries and more related to fulfilling the requirement that a class description must be sufficiently definite so that it is

administratively feasible for the court to determine whether a particular individual is a member. *See Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) (citations omitted). Courts have found feasibility lacking in a class definition that contains claimants who did not have a hearing "within a reasonable time," *id.*, a definition requiring individual determinations of constitutional violations, *see Catanzano v. Dowling*, 847 F. Supp. 1070, 1079 (W.D.N.Y. 1994), and a definition requiring legal determinations of whether each class member was "disabled" under the Americans with Disabilities Act, *Davoll v. Webb*, 194 F.3d 1116, 1146 (10th Cir. 1999). Permissible defining criteria have been described as follows:

> For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition. Similarly, a reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition.

*Moore's Federal Practice* § 23.21[3] (citations omitted).

Plaintiffs' classes are defined by classic categories of objective criteria. Class membership based on the proposed definition requires determining the following facts: the location of the insured risk/property; the geographical boundaries for the relevant local government; the local tax for a particular taxing district within whose boundaries the insured property is located; and the local tax charged and collected from the policyholder. Although Defendants describe these facts as disputed, it is clear from their briefs and arguments below that what they dispute is whether they are ultimately liable to a policyholder for an incorrect overcharge, not whether the policyholder was, in fact, so charged. *Cf. Kinder v. Nw. Bank*, 278 F.R.D. 176, 183 (W.D. Mich. 2011) (finding class definition sufficiently definite when based on objective criteria including whether plaintiffs used one of the defendant's ATMs at one of the specified locations during the relevant time period and whether they were charged a fee).

To the extent that these facts overlap with a required element of Plaintiffs' claims (such as showing injury), allowing a determination that an individual was subject to one tax, but was charged a different tax, is no different than determining whether an individual is of a minority race or gender, required elements in class action discrimination cases and most certainly part of the class definition. *See, e.g.*, *Dukes*, 131 S. Ct. at 2547 (describing class as including only female employees of Wal-Mart). Had this class included all Kentucky policyholders, Defendants would surely have challenged the definition as overly broad. The criteria referenced in the class definition are objective and are not necessarily determinative of the ultimate issue of liability. The district court did not abuse its discretion in finding the proposed definition sufficiently definite.[2]

Defendants also argue the class is not administratively feasible because it would entail a large number of individual determinations in order to ascertain class membership. Defendants point to the great number of policies issued to Kentucky insureds[3] that they claim would have to be reviewed in order to determine which policyholders overpaid premium taxes. Finding that the class properly could be certified without the 100% accuracy Defendants assume to be requisite, the district court agreed with Plaintiffs that the subclasses can be "discerned with reasonable accuracy" using Defendants' electronic records and available geocoding software, though the process may require additional, even substantial, review of files.

Several other courts have found that the size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification. *See*, *e.g.*, *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir.

---

[2]For similar reasons, Defendants' challenge—that the class definition violates their Seventh Amendment right to have one jury resolve all factual disputes that go to liability—fails. *Cf. Dukes*, 131 S. Ct. at 2552 ("The necessity of touching aspects of the merits in order to resolve preliminary matters, *e.g.*, jurisdiction and venue, is a familiar feature of litigation.").

[3]For example, for several insurers involved in this appeal, the district court identified the number of policy transactions during the class period, through the time of briefing, involving assignment of a risk location as follows: (1) State Farm, 7,027,320; (2) Nationwide, 339,587; and (3) Kentucky Farm Bureau, 6,970,763.

2001), (holding that the sheer size of a class and the concomitant size of liability "alone cannot defeat an otherwise proper certification"), *superseded by statute on other grounds as stated in Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006); *cf. Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010) (holding that if the size of the defendant's potential liability alone was a sufficient reason to deny class certification, "the very purpose of Rule 23(b)(3)—'to allow integration of numerous small individual claims into a single powerful unit'—would be substantially undermined"); *Perez v. First Am. Title Ins. Co.*, No. CV-08-1184-PHX-DGC, 2009 WL 2486003, at *7 (D. Ariz. Aug. 12, 2009) ("Even if it takes a substantial amount of time to review files and determine who is eligible for the [denied] discount, that work can be done through discovery."); *Slapikas v. First Am. Title Ins. Co.*, 250 F.R.D. 232, 250 (W.D. Pa. 2008) (finding class action manageable despite First American's assertion that "no database exists easily and efficiently to make the determination that would be required for each file").[4]

Equally—if not more—persuasive is the district court's practical rationale: "[T]he need to manually review files is not dispositive. If it were, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained." We find this reasoning compelling. It is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people. To allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies. We reject Defendants' attacks on administrative feasibility based on the number of insurance policies at issue.

---

[4] As Defendants note, this court reached a different result than *Slapikas* in a recent title insurance case, *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011). However, in *Randleman*, we distinguished *Slapikas* on a different basis—namely the different state title insurance laws in Pennsylvania, which made the result in *Slapikas* reasonable but not reasonable under Ohio law. *Randleman*, 646 F.3d at 354-55.

Plaintiffs further support administrative feasibility through expert evidence that Defendants' policy records are in a form compatible with geocoding software. Such software uses geographic information systems technology to verify the precise location of any address and has been used to process local-tax-jurisdiction data. Plaintiffs' software expert, Paul Manning, was permitted to testify (after an earlier, separate *Daubert* hearing[5]) that he believed Defendants' data is in a format that can be used in conjunction with geocoding software. Although Defendants argue that Manning opined beyond his training, the district court's ruling on admissibility was limited and also noted that the software would be used to *assist* in identifying potential class members and would be used in conjunction with manual review.

Defendants argue that their own software expert, Craig Knoblock, provided the only testimony about the accuracy of the geocoding programs and he opined that the error rate could be between 5 and 30%. Alleging that the error rate could be great, Defendants argue geocoding provides no assistance in identifying potential class members. As noted above, it is difficult to understand why Defendants should be able to avoid a class suit even if Plaintiffs did not offer a means to escape the burden of identifying class members. *See Slapikas*, 250 F.R.D. at 250 (finding class action manageable despite assertion that "no database exists easily and efficiently to make the determination that would be required for each file"). Regardless, the district court did not fail to consider Knoblock's testimony or fail to look beyond Plaintiffs' submission that the geocoding programs are reasonably accurate. The district court noted that an error rate was essentially unknown and that Knoblock's error range was not dispositive for this program. The court noted that geocoding programs have been used in settlements of other class litigation over the same local taxation system and, in fact, the specific program used by Plaintiffs has been approved by the Kentucky Department of

---

[5]Defendants argue the district court did not conduct a full *Daubert* analysis of Manning's qualification to testify about the accuracy of geocoding software. This argument is incorrect for two reasons: (1) Manning was not offered to testify about the software's accuracy, nor did the district court rely on any such statements; and (2) the district court fully considered Manning's qualifications as they related to his offered testimony on Defendants' data's compatibility with the software and stated it passes a "limited *or full Daubert* analysis." (Emphasis added).

Insurance ("KDI") as one verification program among several that the KDI now mandates insurers utilize. Therefore, the record before the district court supports its determination that the class was administratively feasible using a geocoding software program and manual review.

Defendants' arguments are unavailing. The district court did not abuse its discretion in deciding that the class is not "fail-safe" and in finding that the class definition is administratively feasible.

### 2.     *Rule 23(a) Requirements*

#### a.     **Numerosity**

Federal Rule of Civil Procedure 23(a)(1) requires as a prerequisite to class action that "the class [be] so numerous that joinder of all members is impracticable." *See In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. "While no strict numerical test exists, 'substantial' numbers of affected consumers are sufficient to satisfy this requirement." *In re Whirlpool*, 2012 WL 1537914, at *7 (citing *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). Nonetheless, "impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005).

Defendants assert the district court erred in finding numerosity because it impermissibly calculated potential class size by relying on an assumption that a 1% error rate could be attributed to the assignment of premium tax rates by all Defendants. "In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976); *see also In re Am. Med. Sys., Inc.*, 75 F.3d at 1079. Plaintiffs presented evidence from their expert, Manning, on the total number of policies written by each Defendant during the class period. Plaintiffs then advocated for application of a 1% error rate to these totals, relying on Plaintiffs' past experience with identifying members of other settlement subclasses in related actions and relying on the results

offered by the Kentucky Office of Insurance when it conducted random market analyses of some insurers.

It was within the district court's discretion to infer that the 1% error rate was applicable to the Defendants. *Cf. Kinder*, 2011 WL 5282589, at *5 (relying on assumption about number of potential class members to satisfy numerosity requirement); *Garrison v. Asotin Cnty.*, 251 F.R.D. 566, 569 (E.D. Wash. 2008) (requirement is met "so long as general knowledge and common sense indicate that joinder would be impracticable"). This error rate results in class members ranging between 270 and 9,000 depending on the insurer. Although Defendant Kentucky Farm Bureau argues that its tax assignment process is more reliable than the other insurers and it is unreasonable to attribute a 1% error rate to its practices, Kentucky Farm Bureau also has one of the larger number of policies among the named Defendants. As Plaintiffs point out, even if the error rate were reduced to 0.0001%, the class would consist of approximately 69 members. *See In re Am. Med. Sys.*, 75 F.3d at 1076 (noting that this circuit had found a class of 35 to be sufficient to meet the numerosity requirement). The court did not abuse its discretion in finding numerosity satisfied.

#### b.        Commonality and Typicality

Rule 23(a)(2) requires plaintiffs to prove that there are questions of fact or law common to the class, and Rule 23(a)(3) requires proof that plaintiffs' claims are typical of the class members' claims. Commonality and typicality "tend to merge" because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 131 S. Ct. at 2551 n.5. To demonstrate commonality, the plaintiffs' "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Similarly, "[a] necessary consequence of the typicality

requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Sprague*, 133 F.3d at 399.

Plaintiffs present two facts common to the class: (1) whether each member was charged an incorrect amount for local government premium taxes; and (2) whether the insurer had a uniform, institutional policy or practice to identify local government taxing districts for its insureds. Plaintiffs present seven common legal questions:

> (1) have Defendants engaged in unlawful billing practices and illegal dealings contra to Kentucky's illegal Dealing in Premium statute, Ky. Rev. Stat. Ann. § 304-12-190;
>
> (2) is a "charge" on a premium a tax within the meaning of the Illegal Dealing statute;
>
> (3) does "willful" under the Illegal Dealing statute require individual proof of intent;
>
> (4) does Defendants' collection of taxes that were either not owed or at rates higher than permitted constitute conversion;
>
> (5) are Defendants authorized to charge their customers a collection fee that is in addition to an otherwise lawful premium tax;
>
> (6) do Defendants owe Plaintiffs and class members a duty to use best methodologies available to determine the applicable local government premium tax; and
>
> (7) does Defendants' charge of additional fees to Plaintiffs and class members violate Kentucky Department of Insurance regulations for servicing the collection of municipal taxes imposed by local governments.

Defendants generally do not challenge the enumerated common questions of law. Instead, Defendants each contend that they do not have a uniform institutional policy that affected the tax jurisdiction assignment of each policyholder. They argue that misassignments result from factual circumstances unique to each individual policyholder. For example, Defendant Nationwide argues that research shows named-Plaintiffs Jason and Diana Young were assigned to an incorrect taxing jurisdiction due

to a "garbled" voice mail message which resulted in a misspelling of the Youngs' address. In essence, Defendants argue that litigation by policyholders is advanced only by examining each individual policyholder's circumstances. Plaintiffs respond that they expect to demonstrate that the injury sustained by the named Plaintiffs could have been prevented by appropriate practices, such as utilization of geocoding software, which would also have prevented similar harm to others.

Because the named Plaintiffs allege that geocoding verification procedures would have prevented both their tax misassignment, notwithstanding the allegedly garbled voice mail message, and the tax misassignments of the class members generally, Plaintiffs have satisfied the elements of both commonality and typicality. Common proof of causation—that use of geocoding software could have prevented the harms suffered by the class members—is central to all of Plaintiffs' claims and would advance the interests of the class as a whole. As Plaintiffs concede, Defendants will have some individualized defenses against certain policyholders; however, the existence of these defenses does not defeat the commonality requirement under the theory asserted by Plaintiffs. *See Sterling v. Velsicol Chem. Corp*, 855 F.2d 1188, 1197 (6th Cir. 1988) (holding that the presence of questions peculiar to each individual member of the class was no bar when liability arose from a single course of conduct). The court did not abuse its discretion in finding commonality under Rule 23(a)(2). Because Plaintiffs allege both a single practice or course of conduct on the part of each Defendant—the failure to implement a geocoding verification system—that gives rise to the claims of each class member and a single theory of liability, the court did not abuse its discretion in finding that named Plaintiffs' claims are typical of the class as required by Rule 23(a)(3). *In re Am. Med. Sys.*, 75 F.3d at 1082 ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.").

### c.      Adequacy of Representation

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations and internal quotation marks omitted).  This court looks to two criteria for determining adequacy of representation:  "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted).  This court also "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).

Based on this standard, the district court did not abuse its discretion in concluding that the adequacy requirement of Rule 23(a)(4) was satisfied.  The court stated that Plaintiffs' prosecution of the litigation to date supported a finding that they will continue to vigorously prosecute the claims of the class as a whole.  On appeal, Defendants argue that (1) some of the named Plaintiffs are no longer policyholders of the Defendants and/or received reimbursements for the overcharged premium taxes and (2) the named Plaintiffs are willing to sacrifice inclusion of some members of the defined class who will not be identified using the geocoding software.

The district court rejected Defendant Nationwide's argument that its post-filing refund of excess taxes to the Youngs rendered them inadequate class representatives.  Nationwide fails to explain how this refund satisfies all the Youngs' claims against it such that it removes their incentive to be vigorous advocates for the interests of the class.  Further, a review of the class identification process advocated by Plaintiffs and approved by the district court—the use of geocoding software combined with manual review—does not reveal a carelessness with regard to potentially unidentified members.

The district court also found Plaintiffs' counsel were sufficiently qualified and experienced and thus capable of serving as class counsel.  Defendants do not dispute this finding on appeal.

3.       *Rule 23(b)(3)*

In addition to meeting the requirements of Rule 23(a), a class must satisfy one of the categories of Rule 23(b).  The district court found the requirements of Rule 23(b)(3), that common questions predominate and that a class action is a superior way to resolve the controversy, to be satisfied.

### a.       Predominance

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman*, 646 F.3d at 352-53 (citing *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007)).  Further, "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie*, 511 F.3d at 564 (citation and internal quotation mark omitted).  While the commonality element of Rule 23(a)(2) requires showing one question of law or fact common to the class, a Rule 23(b)(3) class must show that common questions will *predominate* over individual ones.

As in the commonality and typicality discussions, Defendants again urge that individualized inquiries are required.  Defendants, in essence, argue that Plaintiffs cannot establish the causation element of their claims without reviewing the communications between each policyholder and insurance agent to decipher where the error originated. Defendants point to situations, such as the provision of incorrect information by a policyholder, which they claim relieve them of responsibility for an incorrect premium tax charge. These potential individual inquiries do not defeat the predominance of common questions. *See Powers v. Hamilton Pub. Defender Com'n*, 501 F.3d 592, 619

(6th Cir. 2007) (rejecting challenge to class of criminal defendants allegedly denied indigency hearings before being taken into custody based on variations in the experiences of individual class members).

Plaintiffs proceed on the theory that verification processes using geocoding software would catch most types of errors and that Defendants caused each class members' injury simply by failing to use such processes. Plaintiffs will have to prove their theory at trial; but for class certification, this is a predominate issue central to each of Plaintiffs' claims and subject to generalized proof. And, of course, the district court would be free to revisit this issue at a later time if discovery shows that the number of policyholders whose tax overcharges are due to matters unrelated to the Defendants' actions is more significant than it now appears. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 826 (7th Cir. 2012). The district court did not abuse its discretion in determining that common issues predominate.

### b. Superiority

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc.*, 521 U.S. at 617 (citation omitted). In considering whether the superiority requirement of Rule 23(b)(3) is satisfied, courts consider "the difficulties likely to be encountered in the management of a class action." *Beattie*, 511 F.3d at 567. "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

"[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers*, 501 F.3d at 619; *see also Sterling*, 855 F.2d at 1197 (acknowledging an "increasingly insistent need" to certify class actions for lawsuits arising out of a "single course of conduct"). Where many individual inquiries are

necessary, a class action is not a superior form of adjudication. *See Pipefitters Local 636 Ins. Fund*, 654 F.3d at 631. However, where a threshold issue is common to all class members, class litigation is greatly preferred. *Daffin*, 458 F.3d at 554 ("Permitting individual owners and lessees of 1999 or 2000 Villagers to litigate their cases is a vastly inferior method of adjudication when compared to determining threshold issues of contract interpretation that apply equally to the whole class.").

Defendants again rely on their assertion that individual inquiries predominate in arguing Plaintiffs have not shown that class litigation is a superior method of adjudication. For the reasons discussed above, this argument will not prevail here. Defendants also argue class litigation is not superior because the Kentucky Office of Insurance has an administrative process by which policyholders can challenge a premium tax charge and that process has been made mandatory since the start of this litigation.[6] *See* Ky. Rev. Stat. Ann. § 304.2-165.

The alleged tax overcharges in this case are relatively small for each potential class member, ranging from $32.60 to $126. Further, few policyholders are likely to be aware of their tax misassignment. *See Kinder*, 278 F.R.D. at 186 ("Most members of the class are likely not aware of the technical violation of the statute. The likelihood that many members of the class will choose to bring individual lawsuits is remote."). Given the unlikelihood that many injured policyholders will discover, let alone attempt to vindicate, their injury individually through the administrative process in Kentucky, the district court did not abuse its discretion in finding that class litigation was a superior method of adjudicating Plaintiffs' claims. *Cf. Franklin Cnty., Ky. v. Travelers Prop. Cas. Ins. of Am.*, 368 F. App'x 669, 672 (6th Cir. 2010) (noting that the Kentucky Office of Insurance cited "manpower concerns" when it declined to consider all plaintiff's claims of tax miscalculations by insurance companies).

---

[6]In an earlier decision, the district court in this case held that exhaustion of those administrative remedies was not mandatory for policyholders prior to the recent amendments. Defendants do not challenge that decision and argue only that the class action vehicle is not superior to the administrative option.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's certification of the Plaintiff subclasses.