RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BRIDGING COMMUNITIES INC., a Michigan corporation; GAMBLE PLUMBING & HEATING, INC., a Michigan corporation, individually and as the representatives of a class of similarly situated persons,

*Plaintiffs-Appellants*,

*v.*

TOP FLITE FINANCIAL INCORPORATED,

*Defendant-Appellee*.

No. 15-1572

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-14971—Avern Cohn, District Judge.

Argued: July 26, 2016

Decided and Filed: December 15, 2016

Before: GILMAN, WHITE, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David M. Oppenheim, BOCK, HATCH, LEWIS & OPPENHEIM, LLC, Chicago, Illinois, for Appellants. C. Thomas Ludden, LIPSON NEILSON COLE SELTZER & GARIN, P.C., Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** Phillip A. Bock, BOCK & HATCH LLC, Chicago, Illinois, for Appellants. Karen A. Smyth, Shawn Grinnen, LIPSON NEILSON COLE SELTZER & GARIN, P.C., Bloomfield Hills, Michigan, for Appellee.

1

---

**OPINION**

---

JANE B. STRANCH, Circuit Judge.   This is the latest in a string of "junk fax" cases under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, that involves a fax-broadcasting company named Business to Business Solutions (B2B).   Plaintiffs Bridging Communities, Inc. (Bridging Communities) and Gamble Plumbing & Heating, Inc. (Gamble) allege that defendant Top Flite Financial, Inc. (Top Flite) violated the TCPA when it hired B2B to send unsolicited fax advertisements to plaintiffs and a class of similarly situated persons and businesses.   The district court denied plaintiffs' motion for class certification and dismissed their complaints as moot after the plaintiffs chose not to accept offers of individual judgment.   For the reasons that follow, we REVERSE.

## I.  BACKGROUND

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless the sender and recipient have "an established business relationship," the recipient voluntarily made its fax number available, and the unsolicited fax contains a notice meeting certain statutory and regulatory requirements.   47 U.S.C. § 227(b)(1)(C), (b)(2)(D); 47 C.F.R. § 64.1200(a)(4).   The statute provides a private right of action permitting plaintiffs to enjoin a violation of the TCPA and/or to recover either actual money lost from the violation or $500 per violation, whichever is greater.   *See* 47 U.S.C. § 227(b)(3).   Damages may be trebled if a court finds that a violation was willful or knowing.   *See id.*

We have explained in prior cases that Caroline Abraham operated B2B as a fax advertising company that catered to small businesses.   *See, e.g.*, *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 629–30 (6th Cir. 2015).   As one district court put it, for TCPA purposes, "Abraham functioned as a modern-day 'typhoid mary[.]'"   *Avio, Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 437 (E.D. Mich. 2015) (quoting *APB Associates, Inc. v. Bronco's Saloon, Inc.*, 297 F.R.D 302, 305 (E.D. Mich. 2013)).   B2B purchased a list of fax numbers from a company

called InfoUSA, Inc.  *See id.*  For a fee, B2B faxed clients' advertisements to hundreds of numbers from that list, a practice known as "fax-blasting."  *Id.*  B2B's records show that it successfully sent thousands of faxes on behalf of its clients.  *See Imhoff Inv., L.L.C.*, 792 F.3d at 629.  "Abraham [has] testified that she believed it was legal to send fax advertising to companies that had an established business relationship with the sender and mistakenly thought the companies on the InfoUSA list met that standard.  Abraham did not call the businesses on her fax lists to seek consent to send them fax advertisements."  *Id.*

In the instant case, it appears that B2B successfully faxed an advertisement for Top Flite—a residential mortgage company based in Michigan—to more than 4,000 fax numbers on March 20 and 30, 2006, using the InfoUSA list.  (*See* R. 77-4, PageID 1567; R. 79-2, PageID 1623–24, 1628–29.)  The ad B2B sent touted Top Flite's mortgage purchase and refinancing services, offering "0 Down, 0 Closing Costs!"  (R. 1, PageID 10; *see also* R. 79-2, PageID 1635–36.)  According to B2B's records, it successfully faxed the Top Flite ad to Bridging Communities, a nonprofit grassroots neighborhood collaboration in Southwest Detroit, and Gamble, a Michigan corporation also located in Detroit.  Both Bridging Communities and Gamble allege that the fax was unsolicited and that they did not have an established business relationship with Top Flite.

Bridging Communities filed the instant TCPA class action complaint against Top Flite on December 22, 2009.  The district court initially granted Top Flite's motion to dismiss for lack of jurisdiction, but Bridging Communities appealed and a panel of this court found jurisdiction and reversed.  *See Bridging Communities, Inc. v. Top Flite Fin., Inc.*, 446 F. App'x 764, 765 (6th Cir. 2011) (per curiam) (noting that "federal courts do have federal-question jurisdiction over private TCPA actions").  On remand, Top Flite eventually answered the complaint, the district court issued an order permitting discovery on the issue of class certification, and the parties undertook discovery.  Top Flite filed a second motion to dismiss before discovery closed, this time arguing that Michigan law barred Bridging Communities's claims, but the district court denied Top Flite's motion in January 2013.  Meanwhile, in September 2012, Gamble filed a separate class action complaint against Top Flite based on the same fax-advertising campaign.  Top Flite filed a motion to consolidate, which neither Bridging Communities nor Gamble opposed.  On May 30,

2013, the district court granted Top Flite's motion and consolidated the two cases into the present action.

The issue at the heart of this appeal is plaintiffs' motion for class certification, which Bridging Communities filed on October 15, 2012.[1]  The motion proposed the following class definition:

> All persons sent one or more faxes in March 2006 from "Top Flite Financial" offering "0 Down, 0 Closing Costs" for "Mortgages" on "Purchases / ReFinancing," and identifying (718) 360-0971 as a "Remove Hotline" telephone number.

(R. 47, PageID 468.)  Bridging Communities argued in the motion that the four prerequisites to class certification enumerated in Federal Rule of Civil Procedure 23(a) are satisfied in this case: (1) the proposed class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of the representative parties are representative of the claims of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Bridging Communities also argued that its proposed class satisfied the strictures of Rule 23(b)(3) because common questions of law or fact predominate over any questions affecting only individual class members, and a class action is the superior method for adjudicating the instant claims.

The district court disagreed.  It denied class certification to Bridging Communities and Gamble in a seven-page order issued on June 3, 2013.  In so doing, the court "ma[de] no determinations as to the satisfaction of the requirements in Rule 23(a)," and instead focused its analysis exclusively on "application of Rule 23(b)(3)" and the issue of predominance.  (R. 65, PageID 1354.)  The district court expressed concern that individual class members might have solicited or consented to receiving the challenged faxes, and held that determining if class members had so consented "would require investigation of the factual circumstances of each person or business that received a facsimile transmission[.]"  (*Id.* at PageID 1355.)  The court explained that it was "not persuaded" that the issue of consent was "subject to generalized

---

[1]Gamble filed a separate motion for class certification, but "due to the factual similarities of both motions," the district court analyzed only Bridging Communities's motion in its opinion and then applied the resulting holding to both motions for class certification.  (R. 65, PageID 1352, n.1.)

proof," and, consequently, would "exercise its discretion to deny [the] request for class certification" on the ground that plaintiffs had not shown that common questions of law or fact predominate over questions concerning individual class members. (*Id.* at 1355–56.) Bridging Communities and Gamble filed a petition pursuant to Federal Rule of Civil Procedure 23(f) seeking permission to appeal immediately the district court's order denying certification, but a panel of this court denied the petition on October 23, 2013.

The case proceeded in the district court, and the parties engaged in general discovery. On February 10, 2014, Top Flite extended offers of judgment under Federal Rule of Civil Procedure 68(a) to both Bridging Communities and Gamble. Specifically, Top Flite offered to allow judgment against it in the amount of $1,550 plus accrued costs and excluding attorneys' fees. Top Flite also offered to agree to an injunction prohibiting Top Flite or any of its agents from sending unsolicited fax advertisements to any person in violation of the TCPA, but it declined to admit any liability as part of the offers. Bridging Communities and Gamble both allowed more than 14 days to pass without accepting the offers. Under Rule 68(b), the offers lapsed and were automatically considered withdrawn. *See* Fed. R. Civ. P. 68 (a)–(b). On March 6, 2014, Top Flite filed a third and final motion to dismiss, arguing that because the district court had denied class certification and plaintiffs had failed to accept offers of judgment that encompassed all of the individual relief sought in their complaints, both complaints were now moot and the district court should dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). Plaintiffs opposed, but the district court granted Top Flite's motion and dismissed the complaints on April 28, 2015. Bridging Communities and Gamble timely appealed.

## II.  STANDARD OF REVIEW

We review a district court's grant or denial of class certification for an abuse of discretion. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (quoting *Young*, 693 F.3d at 536). We review de novo,

however, a district court's dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *See Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917, 919 (6th Cir. 2009).

## III.  ANALYSIS

We address the district court's ruling on class certification before turning to the order dismissing plaintiffs' complaints.[2]

### A.  Class Certification

To merit certification, a proposed class must satisfy all four prerequisites of Rule 23(a) and fall within one of the three types of class actions described in Rule 23(b). *Young*, 693 F.3d at 537. The parties seeking class certification bear the burden of showing that Rule 23's requirements are met. *Id.* Because the district court limited its analysis to the question of predominance under Rule 23(b)(3), the only question before us with respect to certification is whether the district court abused its discretion in holding that Bridging Communities and Gamble failed to show that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3); *see also Young*, 693 F.3d at 536.

The Supreme Court has emphasized that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1191 (2013) (emphasis in original). Common questions are those "that can be proved through evidence common to the class." *In re Whirlpool Corp.*, 722 F.3d at 858 (citing *Amgen, Inc.*, 133 S. Ct. at 1195–96). That said, plaintiffs seeking class certification "need not prove that each element of a claim can be established by classwide proof:  'What the rule does require is that common questions *predominate* over any questions affecting only individual [class] members.'" *Id.* (emphasis and alteration in original) (quoting *Amgen, Inc.*, 133 S. Ct. at 1196). In other words, "[t]o satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as

---

[2]The late Honorable Lawrence P. Zatkoff authored the class certification order in this case. The case was reassigned to Judge Avern Cohn who authored the dismissal order.

a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (second alteration in original) (citation omitted).

Top Flite raised the possibility of consent to receive faxes and/or prior existing business relationships as a defense to liability under the TCPA before the district court. (R. 25, PageID 152.) Top Flite also argued that determining the presence or absence of consent for each class member would require individualized investigation, rendering class certification inappropriate. (*See* R. 53, PageID 912–15.) Bridging Communities and Gamble contended that the question of consent was subject to generalized proof because: (1) the challenged faxes were sent to a list obtained from InfoUSA; (2) applicable federal regulations require senders who "obtain facsimile number[s] from other sources" to "take reasonable steps to verify that the recipient agreed to make the number available for public distribution[,]" 47 C.F.R. § 64.1200(a)(4)(ii)(B); and (3) Caroline Abraham testified that B2B generally did not contact anyone on the InfoUSA list to inquire about consent prior to transmitting faxes. (*See* R. 47, PageID 481–82.) Bridging Communities and Gamble also pointed out that in response to discovery requests for any documents showing established business relationships with or prior consent from class members, Top Flite indicated that it had nothing to produce. (*See id.* at PageID 482.)

The district court agreed with Top Flite, holding that "[t]he factual core of this case is not whether Defendant sent facsimile transmissions but, rather, whether each of the *individual* class members solicited the facsimiles." (R. 65, PageID 1355 (emphasis in original).) The district court discounted Abraham's testimony about B2B's general practices and concluded instead that "the possibility that some of [the class] members gave consent to Defendant and or InfoUSA prior to receiving the facsimiles" meant that "determining liability would require investigation of the factual circumstances of each person or business that received a facsimile transmission" advertising Top Flite. (*Id.* at PageID 1356, 1355.) On appeal, Bridging Communities and Gamble argue that the district court abused its discretion when it allowed the unsubstantiated possibility of individualized consent to defeat predominance. They further maintain that Top Flite's defense of consent is subject to class-wide proof.

We have recognized repeatedly that "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Young*, 693 F.3d at 544 (quoting *Beattie*, 511 F.3d at 564). Here, Bridging Communities and Gamble presented evidence suggesting a class-wide absence of consent—evidence that B2B failed to contact anyone on the list it purchased from InfoUSA to verify consent prior to faxing them advertisements. In response, Top Flite merely alleged that class members *might* have given consent in some other way. The district court adopted this idea, opining that B2B's failure to obtain consent "does not foreclose the possibility that some of those [class] members gave consent to [Top Flite] and or InfoUSA[,]" even though Top Flite did not offer any information or evidence to support that theory. (R. 65, PageID 1356.)

We are unwilling to allow such "speculation and surmise to tip the decisional scales in a class certification ruling[,]" *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000), particularly under the circumstances present here. Our precedent is clear that a possible defense, standing alone, does not automatically defeat predominance. *See Young*, 693 F.3d at 544; *Beattie*, 511 F.3d at 564; *see also In re HCA Holdings, Inc.*, No. 14-0511, 2015 WL 10575861, at *2 (6th Cir. Feb. 26, 2015). Even where defendants point to some evidence that a defense will indeed apply to some class members, which is more than Top Flite did here, courts routinely grant certification because "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow v. Sw. Bell. Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *see also Avio, Inc.*, 311 F.R.D. at 437–46. As the First Circuit has recognized, moreover, if evidence later shows that a "defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms. For example, it can place class members with potentially barred claims in a separate subclass, or exclude them from the class altogether." *Smilow*, 323 F.3d at 39–40 (citations omitted).

Top Flite is correct that the Fifth Circuit has held that issues of consent may preclude class certification on predominance grounds in some TCPA cases. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326–29 (5th Cir. 2008). In so doing, however, the Fifth Circuit recognized that in cases where, as here, a sender "obtained all of the fax recipients' fax numbers from a single purveyor of such information[,]" there exists a "class-wide means of establishing

the lack of consent based on arguably applicable federal regulations." *Id.* at 327–328. The common question in such cases is "whether the inclusion of the recipients' fax numbers in the purchased database indicated their consent to receive fax advertisements, and there [a]re therefore no questions of individual consent." *Id.* at 328.

We hold that the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3). *See Young,* 693 F.3d at 544; *Beattie,* 511 F.3d at 564. Holding otherwise and allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases "wide latitude to inject frivolous issues to bolster or undermine a finding of predominance." Robert G. Bone & David S. Evans, *Class Certification and the Substantive Merits,* 51 Duke L.J. 1251, 1269 (2002). In light of the foregoing, particularly the class-wide evidence Bridging Communities and Gamble presented showing an absence of consent, we hold that speculation alone regarding individualized consent was insufficient to defeat plaintiffs' showing of predominance under Rule 23(b)(3). The district court abused its discretion in holding otherwise in this case.[3]

## B. Dismissal

Without regard to whether class certification was properly denied in this case, Supreme Court precedent requires us to reverse the district court's 12(b)(1) dismissal of the complaints as moot based on Bridging Communities's and Gamble's refusal to accept Top Flite's offers of individual judgment. Top Flite relied on our opinion in *O'Brien v. Ed Donnelly Enterprises,* 575 F.3d 567, 574 (6th Cir. 2009), for the proposition that an unaccepted "Rule 68 offer of judgment can be used to show that the court lacks subject-matter jurisdiction." (R. 70, PageID 1394.) But the Supreme Court abrogated *O'Brien* in *Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663, 672 (2016), which the Court decided while this appeal was pending. In *Campbell-Ewald,* the Court rejected such a gambit, holding unequivocally that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case[.]" 136 S. Ct. at 672. "When a plaintiff

---

[3]Top Flite advanced an additional argument in its brief on appeal, contending that it is not responsible for the advertisement that B2B sent to plaintiffs because the person who hired B2B was working as an independent contractor for a Top Flite subsidiary, Team Top Flite, Inc., and not directly for Top Flite. (*See* Appellee's Br. at 6–9.) As Top Flite conceded at oral argument, however, the question of who ordered the faxes and in what capacity—and the question of who qualifies as a "sender" under the TCPA—is common to the class. This argument is therefore insufficient to defeat plaintiffs' showing of predominance.

rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect." *Id.* at 670 (quoting *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1533 (2013) (Kagan, J., dissenting)). In other words, "[u]nder basic principles of contract law, . . . [a] Rule 68 offer of judgment, once rejected, ha[s] no continuing efficacy[,]" and Top Flite may not rely on such lapsed offers "to avoid a potential adverse decision, one that could expose it to damages a thousand-fold larger than" the offers Bridging Communities and Gamble declined to accept here. *Id.* Although the Supreme Court decided *Campbell-Ewald* after the district court dismissed plaintiffs' complaints, "[w]here there has been an intervening change in law during the pendency of an appeal, this court generally must apply the law in effect at the time it renders its decision." *Lipker v. AK Steel Corp.*, 698 F.3d 923, 933 (6th Cir. 2012) (quoting *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 712 (1974)).

## IV. CONCLUSION

For the reasons set forth above, we **REVERSE** the district court's denial of class certification and dismissal for lack of jurisdiction. We **REMAND** for further proceedings consistent with this opinion.