BRIEFS AND ORAL ARGUMENTS FOR APPELLANTS: Jasper D. Ward, IV, Alex C. Davis, Louisville, Kentucky.
BRIEF FOR APPELLEE LIBERTY TIRE SERVICES OF OHIO, LLC: Edward H. Stopher, Rod D. Payne, Todd P. Greer, Louisville, Kentucky.
BRIEF FOR APPELLEE BOHANNON PROPERTIES, LLC: Patrick B. Healy, Judd Uhl, Fort Wright, Kentucky.
ORAL ARGUMENTS FOR APPELLEE LIBERTY TIRE SERVICES OF OHIO, LLC: Todd P. Greer, Rod D. Payne, Louisville, Kentucky.
ORAL ARGUMENT FOR BOHANNON PROPERTIES, LLC: Patrick B. Healy, Fort Wright, Kentucky.
BEFORE: ACREE, MAZE AND NICKELL, JUDGES.
OPINION
ACREE, JUDGE:
*108 Betty Manning and Jenny Cotton appeal the Jefferson Circuit Court's November 3, 2016 opinion and order denying their motion for class certification. Appellants contend the circuit court erred in failing to conclude that they met their burden of demonstrating that a class should be certified under CR [1] 23.01 and 23.02. We affirm.
FACTS AND PROCEDURE
On November 3, 2014, tires located at a recycling facility leased by appellee Liberty Tire Services and owned by appellee Bohannon Properties caught fire and burned for more than two days. A smoke plume from the fire deposited soot, ash, and other particulate matter onto surrounding neighborhoods, homes, automobiles, and driveways. At 10:15 a.m., local authorities issued a Shelter-In-Place (SIP) order for persons living within a one-mile radius of the fire. The order restricted residents from leaving their homes and from being outside for a defined period of time. Authorities lifted the SIP order the next day, November 4, 2014, around 2:59 p.m. Manning was subject to the SIP order; Cotton was not.
Air monitoring conducted during the fire revealed high levels of harmful particulate matter in the surrounding neighborhood, with concentrations as high as 2,200 micrograms per cubic meter, which is considered unhealthy for the general population according to standards promulgated by the U.S. Environmental Protection Agency. Due to an "inversion" weather pattern, the soot and ash in the particulate plume traveled north and stayed close to the ground in the early hours of November 4, 2014, before tapering off later that day when a soil cap was placed on the burning tires.
The Center for Toxicology and Environmental Health (CTEH) performed additional air monitoring at Liberty Tires' request. CTEH tested for levels of particulate matter in the surrounding community, and tested the air for benzene, toluene, and other volatile organic compounds normally found in tire smoke. CTEH discovered that harmful levels of particulate matter exceeded health guidelines for brief periods of time but did not reach unhealthy levels when projected over a longer period of time.
On November 5, 2014, Appellants filed this action against Liberty Tire and Bohannon Properties alleging their reckless, intentional, and negligent conduct caused substantial damage to them and members of a putative class. To ascertain the extent of the particulate matter, soot, and ash in the neighborhood, Appellants retained a forensic meteorology expert. That expert produced a report that used air quality data to illustrate the geographic area north of the tire facility where soot and ash were deposited on surrounding homes. The expert offered the following conclusion:
*109 It is reasonable to expect, as shown on the model data and the extent of the smoke plume, that there would be soot/ash/particulates deposited onto the property within the path of the plume as a result of the fire. [Appellants] were exposed over several days to large quantities of particulate matter contained within the fire smoke plume.
Both non-visible particulates, PM10, PM2.5 and smaller, and large soot and ash were deposited downwind from the origin of the facility fire. The visible suspended particulates (soot and ash) were observed to travel for miles downwind of the fire origin with deposition of soot and ash on cars, homes, and neighborhoods.
The Appellants' homes are located within the area the expert modeled the smoke plume to have traveled, and the expert's report included estimates for the amount of particulate matter deposited on Appellants' properties. Appellants also submitted a report outlining methods for calculating the number of affected class members. That report estimated the proposed class would include 2,500 individuals.
Appellants then moved for class certification. They sought to certify two sub-classes: one related to the SIP order, and the other to the particulate smoke plume. Appellees opposed class certification arguing, among other things, that the proposed class definitions were flawed, that the proposed class representatives did not raise claims typical of those of the class, and that individual issues would predominate over common ones, making Appellants' claims unsuited for class adjudication.
By order entered November 3, 2016, the circuit court denied Appellants' class-certification motion. It found the CR 23.01 prerequisites - numerosity, commonality, typicality, and adequacy of representation - not met, and the CR 23.02(c) requirements - that class litigation is superior and common questions predominate over individual ones - unsatisfied. Appellants appealed.
The sole question before us is whether the circuit court appropriately denied class certification. Appellants challenge each of the circuit court's findings.[2]
STANDARD OF REVIEW
The decision to deny class certification is reviewed for an abuse of discretion. Randleman v. Fidelity Nat'l Title Ins. Co. , 646 F.3d 347, 351 (6th Cir. 2011) ;[3] Sowders v. Atkins , 646 S.W.2d 344, 346 (Ky. 1983). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Goodyear Tire & Rubber Co. v. Thompson , 11 S.W.3d 575, 581 (Ky. 2000) (citation omitted).[4] As this Court undertakes its review, "[w]e must focus our analysis on this limited issue [of class certification] and in so doing scrupulously respect the limitations of the crossover between (1) reviewing issues implicating the merits of the *110 case that happen to affect the class-certification analysis and (2) limiting our review to the class-certification issue itself." Hensley v. Haynes Trucking, LLC , 549 S.W.3d 430, 436 (Ky. 2018).
ANALYSIS
The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." Wal-Mart Stores, Inc. v. Dukes , 564 U.S. 338, 348, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011) (quoting Califano v. Yamasaki , 442 U.S. 682, 700-01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979) ). In Kentucky, CR 23.01 and 23.02 govern class certification. Taken together, the rules provide a comprehensive roadmap to class certification. The mandates of both rules must be satisfied before a class may be certified. The party seeking certification bears the burden of proof. Young v. Nationwide Mut. Ins. Co. , 693 F.3d 532, 537 (6th Cir. 2012).
Here, the circuit court found Appellants failed to prove a single element of CR 23.01 and 23.02. Before turning to the rules, however, we must address an initial, potentially dispositive consideration raised by the Appellees related to the proposed class definition.
A. Class Definition
Although CR 23 does not explicitly command evaluation of the proposed class definition, "the definition of the class is an essential prerequisite to maintaining a class action." Powell v. Tosh , 280 F.R.D. 296, 311 (W.D. Ky. 2012) (citation omitted). Accordingly, "[b]efore a court may certify a class pursuant to [CR] 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.' " Young , 693 F.3d at 537-38 (quoting 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997) ("Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.' ") ).
In this case, Appellants sought certification of a class with two subclasses, defined as follows:
All persons whose dwelling was within an area approximately one mile from the tire fire at 14201 Bohannon Avenue, Louisville, Kentucky, and was subject to a Shelter in Place Order between November 3, 2014 and November 4, 2014.
All persons or property owners on whose property the tire fire at Liberty Tires caused soot, ash, smoke, or other physical remnants to land on November 3 and/or November 4, 2014.
Appellees argue the proposed class definition is nothing more than an impermissible "fail-safe" class. We disagree.
This first step in our analysis makes us all the more mindful of our duty to "scrupulously respect the limitations of the crossover" between reviewing class certification and the merits of the claims. Hensley , 549 S.W.3d at 436. This is because the definition of a "fail-safe" class is "a class that cannot be defined until the case is resolved on its merits." Young , 693 F.3d at 538. It bases its membership not on objective criteria, but on the legal validity of each member's claim. Id. To determine class membership, the merits of each individual claim must be examined. See In re Rodriguez , 695 F.3d 360, 369-70 (5th Cir. 2012) ("A fail-safe class is a class whose membership can only be ascertained by a determination of the merits of the case because the class is defined in terms of the ultimate question of liability."). By its very nature, a fail-safe class "includes *111 only those who are entitled to relief." Young , 693 F.3d at 538. "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment-either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." Id. (quoting Randleman , 646 F.3d at 352 ).
Alternatively, a class is sufficiently defined if the court can "resolve the question of whether class members are included or excluded from the class by reference to objective criteria." Young , 693 F.3d at 538 (emphasis added) (citation omitted). To avoid the crossover of our analysis into the merits, we focus on this standard. Doing so, we conclude the class definition proposed by Appellants does not amount to an impermissible fail-safe class. Membership in the class, by definition, is not dependent on whether a person holds a valid legal claim. Stated another way, the class definition does not hinge on a "fail-safe" definition that requires a merit-based analysis before membership can be determined. Class members need only reside in the one-mile SIP radius, or in the smoke plume radius as modeled by Appellants' expert, or both. Indeed, Appellees make much of the fact that some of the putative class members experienced little or to no harm as a result of the SIP order or the smoke plume. As the Sixth Circuit explained: "[Appellants'] classes will include both those entitled to relief and those not. [Appellees'] other argument-that they are not ultimately liable for many of the class members, even if they were incorrectly charged-proves the point."[5] Young , 693 F.3d at 538. Like Young , the case before us is not a proscribed fail-safe class. Id.
Having resolved this issue, we turn to the specific class prerequisites found in our civil rules. In practice, CR 23.01 and 23.02 create a two-step analysis for class certification. First, the circuit court must determine if all of CR 23.01 's prerequisites have been met. If any of the four are not satisfied, the circuit court must deny class certification. On the other hand, if the circuit court concludes that all four prerequisites of CR 23.01 are met, it then proceeds to the second step. The second step requires the circuit court to determine if one of the three conditions of CR 23.02 is satisfied. If none is satisfied, class certification must be denied; however, if at least one of the three conditions is satisfied, the circuit court must certify the class.
A. CR 23.01
CR 23.01 says:
Subject to the provisions of Rule 23.02, one or more members of a class may sue or be sued as representative parties on behalf of all only if (a) the class is so *112 numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class.
"The four requirements in CR 23.01 to maintaining a class action can be summed up as numerosity, commonality, typicality, and adequacy of representation requirements." Hensley , 549 S.W.3d at 442-43 (emphasis in original). As explained, the absence of any one of these elements is fatal to the formation of the class. See Dukes , 564 U.S. at 349, 131 S.Ct. at 2550.
i. Numerosity
The numerosity element requires that the class be so numerous as to make joinder of all members impractical. CR 23.01. "There is no strict numerical test for determining impracticability of joinder." In re American Medical Systems, Inc. , 75 F.3d 1069, 1079 (6th Cir. 1996). Indeed, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Northwest, Inc., v. Equal Emp't Opportunity Comm'n , 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980).
Numerosity is often tied to the class definition. Burkhead v. Louisville Gas & Elec. Co. , 250 F.R.D. 287, 292 (W.D. Ky. 2008). "A flawed class definition can make it difficult to determine whether a class defined by geographical boundaries satisfies the numerosity requirement." Id. at 294.
Here, the circuit court rejected Appellants' geographic-based class definition and, in so doing, found they failed to satisfy the numerosity requirement. Appellees persuaded the circuit court that the proposed "particulate plume" class was untethered to any geographic limit or boundary, allowing the possibility for someone residing in any Kentucky county to claim class membership. Appellees assert that the "Appellants came forward with no evidence to support their grandiose claims regarding the size of the putative class, and the record and Appellants' own expert report indicates it would be exceedingly small due to the undisputed northerly direction of the smoke plume." The record reveals otherwise.
Defining a class utilizing geographic boundaries is acceptable and appropriate provided there is "an evidentiary relationship between the geographic boundaries of the proposed class definition and the alleged exposure zone[.]" Burkhead , 250 F.R.D. at 292 ; Young , 693 F.3d at 538-39 (citation omitted) ("[A] reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition."). Appellants limited their proposed subclasses to: (i) those persons residing within the one-mile radius of the fire, all of whom were subject to the SIP order; (ii) those persons residing within the smoke plume as described in the forensic meteorology expert's report; or (iii) both. The one-mile SIP radius is definable and easily established. With respect to the particulate smoke plume, Appellants' expert identified a fixed geographical zone representing the plume's path and the resulting particulate matter. The expert modeled the plume and connected it to the soot and ash injuries claimed. Appellants further submitted an expert report describing methods for identifying members of the proposed class. That report estimated the class would cover up to 2,500 individuals. The proposed sub-classes are clearly defined by geographic limits and boundaries. The classes *113 do not, as Appellees suggest, encompass persons residing in an undefined universe.
In rejecting the Appellants' numerosity argument, the circuit court mistakenly relied on two cases out of the Western District of Kentucky in which the district court denied certification in nuisance and property cases involving airborne pollutants. In Burkhead , supra , the plaintiffs alleged that long term emissions from LG & E's operations in its electrical generating plant had invaded their property in the form of particulate matter and noxious odors. The district court denied class certification because the plaintiffs failed to present any evidence "linking the fallout and/or odors about which Plaintiffs complain to the substances that LG&E emits[.]" Burkhead , 250 F.R.D. at 293. Similarly, in Cochran v. Oxy Vinyls LP , No. 3:06CV-364-H, 2008 WL 4146383, at *6 (W.D. Ky. Sept. 2, 2008), the district court found the plaintiffs offered no meaningful evidence that airborne contaminants from defendant Oxy Vinyls were spread in a uniform fashion in all directions from Oxy Vinyls' facility for a distance of up to two miles, or that they spread from Oxy Vinyls at all.
Burkhead and Cochran are factually distinguishable. Unlike Burkhead and Cochran , Appellants submitted expert reports linking the particulate matter to the tire fire at Appellees' facility. It is also notable that Burkhead and Cochran both involved long-term emissions from established manufacturing plants; conversely, this matter involves a one-time, mass-disaster type event, making it easier to link the particulate matter to the tire fire. Appellants also identified logical reasons for the class-boundary locations.
A class of 2,500 is sufficiently numerous to make joinder impracticable. The circuit court abused its discretion in finding Appellants failed to satisfy the numerosity requirement.
ii. Commonality
The commonality element requires there to be common questions of law or fact to the class. CR 23.01. It is unnecessary to have a "complete identity of facts relating to all members as long as there is a common nucleus of operative facts." Wiley v. Adkins , 48 S.W.3d 20, 23 (Ky. 2001). "[F]or purposes of [ CR 23.01(a) ], '[e]ven a single [common] question will do[.]" Dukes , 564 U.S. at 359, 131 S.Ct. at 2556. One significant issue common to the class may be sufficient to warrant certification. See id. ; William Rubenstein, Newberg on Class Actions § 3:20 (5th ed. 2017) ; Dukes , 564 U.S. at 369, 131 S.Ct. at 2562 (Ginsburg, J., dissenting) ("Thus, a 'question' 'common to the class' must be a dispute, either of fact or of law, the resolution of which will advance the determination of the class members' claims."); accord Hensley , 549 S.W.3d at 443.[6]
The circuit court found Appellants could not satisfy CR 23.01(a) 's "commonality" requirement. "Given the disparity in the effect of both the Shelter-in-Place order and the physical remnants," the circuit *114 court explained, "based on geographical and idiosyncratic concerns, there is no way to keep a class action from devolving into countless mini-trials regarding the specifics of each putative class member's individual claim." (R. 725).
We find the circuit court's reasoning infirm. It fails to give credence to the key dispute common to all class members - the Appellees' conduct related to the tire fire. The factual and legal issues surrounding Appellees' conduct and liability do not differ dramatically from one class member to the next. Common questions include: whether the Appellees owed a duty of care; whether they breached that duty of care; the legal relationship between the Appellees and its effect on possible liability; whether Appellees' failure to follow state regulations caused or contributed to the fire; and the steps taken by Appellees to extinguish the fire. These are questions common to the class and require no individual proof. Further, the injuries are the same throughout the class: being subject to the SIP order and/or soot, ash, and smoke invading their properties. Although individual damages and issues exist, Appellees' conduct allegedly giving rise to liability is identical for each plaintiff and class member.
In a single-disaster, mass-tort event like this one, liability often can be determined on a class-wide basis because the common disaster is the same for each of the class members. A single accident occurred allegedly causing similar types of harm or property damage. One set of operative facts will establish, or fail to establish, liability. A single cause - the tire fire - applies equally to each potential class member and each defendant. Accordingly, where, as here, "the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." Sterling v. Velsicol Chemical Corp. , 855 F.2d 1188, 1197 (6th Cir. 1988).
Common proof as to liability is central to all the proposed class members' claims and would advance the interest of the class as a whole. Appellants satisfied the commonality requirement, and the circuit court abused its discretion in finding otherwise.
iii. Typicality
The next element - typicality - requires the claims or defenses of representative parties be typical of the class. CR 23.01. Unlike commonality, which focuses on the group characteristics such as the relationship of common facts and legal issues related to the class as a whole, typicality examines the individual characteristics of the named plaintiffs in relation to the class.
"A plaintiff's claim is 'typical' if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.' " In re Skelaxin (Metaxalone) Antitrust Litigation , 299 F.R.D. 555, 575 (E.D. Tenn. 2014) (citation omitted). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." In re American Medical Systems, Inc. , 75 F.3d at 1082.
The circuit court found Appellants' claims atypical from the putative class members. It reasoned that "[t]he disparity in property damage, as well as the fact that other members of the proposed class may have suffered physical intrusion due to any number of other sources show that *115 these claims are not typical to the entirety of the proposed class." (R.725). We find the circuit court's reasoning suspect.
Again, this is a single-event, mass-accident case. One event, the tire fire, gave rise to both the SIP order and the particulate plume. The Appellants' specific claims arise from the tire fire event, as do the claims of the other putative class members. The same course of conduct by Appellees in allegedly failing to properly store the tires constitutes the basis for all the claims.
Further, Appellants' claims are based on the same legal theories as the class, and the claimed injuries - soot/ash particulate for the smoke-plume subclass, and interference with use and enjoyment of life and property for the SIP subclass - are the same for the named plaintiffs and the class. Manning resides in the SIP zone, and both Appellants reside in the particulate-plume zone. The fact that "individual members of the class still will be required to submit evidence concerning their particularized damage claims in subsequent proceedings" does not defeat the typicality element. Sterling , 855 F.2d at 1197 ; Burkhead , 250 F.R.D. at 296 (individualized damages are not an impediment to certification).
The claims of the class representatives (Appellants) are based on the same legal theories and common facts as those of the class, and are typical of the other members of the putative class in all respects except for the measure of damages. The circuit court abused its discretion in finding Appellants failed to satisfy the typicality element.
iv. Adequacy of Representation
The adequacy of representation element ensures that the representative parties fairly and adequately protect the interests of the class. CR 23.01. "The adequacy inquiry under [ CR 23.01(d) ] serves to uncover conflicts of interest between named parties and the class they seek to represent.... [A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Prod., Inc. v. Windsor , 521 U.S. 591, 625-26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation marks and citations omitted). "[T]he representative must not have any significant interests antagonistic to or conflicting with those of the unnamed members of the class." Hensley , 549 S.W.3d at 443 (quoting Kurt A. Philipps, Jr., et al., 6 Ky. Prac. R. Civ. Proc. Ann. Rule 23.01, Comment 8 (Aug. 2017 updated) (citing Sullivan v. Winn-Dixie Greenville, Inc. , 62 F.R.D. 370 (D.S.C. 1974) ). We must examine the adequacy of both the named representatives and class counsel.
The circuit court found, and the parties do not dispute, that class counsel is "qualified, experienced and generally able to conduct the litigation." Young , 693 F.3d at 543 (quoting Stout v. J.D. Byrider , 228 F.3d 709, 717 (6th Cir. 2000) ). The focus is on whether the named representatives adequately represent the class.
To satisfy this element, "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." Id. (citation omitted). As noted by the Supreme Court, "[t]he adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a) [ CR 23.01 ], which 'serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their *116 absence.' " Windsor , 521 U.S. at 626 n.20, 117 S.Ct. at 2251 (citation omitted).
The circuit court found the Appellants could adequately represent the interest of all proposed class members based on the sheer size of the proposed class and the disparity in impact between the proposed representatives and the entirety of the putative class. This reasoning cannot be harmonized with the circuit court's previous determination that the class was so small it failed to satisfy the numerosity requirement.
The named representatives share a common interest with other class members and are strongly pursuing these interests through appropriate legal counsel. Appellants have demonstrated they are adequate representatives of the class. The circuit court abused its discretion in finding otherwise.
B. CR 23.02
In addition to meeting the requirements of CR 23.01, a class must satisfy one of the categories of CR 23.02. Appellants moved to certify their class under CR 23.02(c). Certification under this subsection is appropriate when "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." CR 23.02(c). A CR 23.02(c) class must satisfy a two-part test of predominance and superiority. Because we cannot find abuse of discretion in the circuit court's holding that the predominance element is unsatisfied, we need not address superiority.
In this part of the analysis, again, we scrupulously adhere to our focus upon certification and not the merits of the claims. CR 23.02(c) "requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Hensley , 549 S.W.3d at 437 (citations and internal quotation marks omitted). The purpose of the predominance requirement is to test whether a proposed class is "sufficiently cohesive to warrant adjudication[.]" Windsor , 521 U.S. at 594, 117 S.Ct. at 2236. "This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class[.]" Bell Atl. Corp. v. AT & T Corp. , 339 F.3d 294, 302 (5th Cir. 2003) (quotation marks and citation omitted). The predominance inquiry is intended to prevent mini-trials within the class action and the adjudication of classwide claims with individual determinations requiring individualized proof. Rodney v. NW. Airlines, Inc. , 146 F. App'x 783, 792 (6th Cir. 2005). Class-wide issues predominate if resolution of some of the legal or factual questions for class-wide resolution can be achieved using generalized proof, and if these particular issues are more substantial than those requiring individualized proof. Thacker v. Chesapeake Appalachia, L.L.C. , 259 F.R.D. 262, 268 (E.D. Ky. 2009). In other words, the predominance element is lacking where issues idiosyncratic to the claims of individual class members would detract from the benefit of a conglomerate approach. That determination must be within the non-abusive exercise of the circuit court's discretion. In this case, we find the circuit court did not abuse its discretion in determining that common issues would not predominate over those issues idiosyncratic to individual claims.
The circuit court found the common questions of law and fact did not predominate. The circuit court first considered Appellant's citation to a Sixth Circuit case they believed analogous to theirs where *117 the "plaintiffs have raised common allegations which would likely allow the court to determine liability (including causation) for the class as a whole." Olden v. LaFarge Corp. , 383 F.3d 495, 508 (6th Cir. 2004). The court then entertained Appellee's argument that:
[P]rior to an individualized determination of damages, Plaintiffs would have to establish that each class member experienced soot and ash, that the particular soot and ash originated from the particular fire at issue rather than other nearby potential sources, that they were harmed by the soot and ash, whether their property was damaged, and whether their use and enjoyment of their property was impeded.
Again, scrupulously avoiding the merits, we perceive this statement by the circuit court as focusing on the questions that would have to be addressed other than the extent of damages. The questions the circuit court identified as distinguishing one claimant from another were these: whether soot and ash actually landed on the property of the individual class member living within the geographical boundaries of the plume; whether the source of the soot and ash was the Appellees' fire; whether soot and ash caused damage; whether the SIP order impacted the individual putative class member's ability to enjoy his or her property, and even whether the individual plaintiffs obeyed the SIP order. Analogous considerations were noted in a case critical of Olden , a case cited by the parties and cited in this opinion several times already - Burkhead v. Louisville Gas & Elec. Co. , 250 F.R.D. 287 (W.D. Ky. 2008).
Burkhead , like this case, involves claims that damages resulted when particulate matter emitted by the defendant settled on the putative class members' property. As here, the putative class representative cited Olden, supra. However, Judge Heyburn, who authored Burkhead , found the Sixth Circuit's analysis was based on a faulty presumption, or at least one that could not be made in cases of this sort. Judge Heyburn said, "[T]he Olden defendant's plant was assumed to be the sole source of any damage the class members suffered, so a causation determination as to one class member could be extrapolated to all and the defendant's tort liability could be adjudicated on a classwide basis." Id. at 299.
The circuit court in the case under review takes the same approach. It reasoned: "[t]here are simply too many factual and legal hurdles to navigate, too many potential alternative causes , and too much disparity in real or potential damage to individuals and their use and enjoyment of their property[.]" (R. 727 (emphasis added) ). While there are undoubtedly common issues of law and fact in this case, there are also numerous questions that must be answered on an individualized basis relating to causation, impact, and damages. The circuit court held that those individualized questions, in numerosity and complexity, predominate over the questions that are common to the putative class. We cannot conclude that such a determination was an abuse of discretion.
We are cognizant of federal case law reiterating that a need for individual damages determinations is not necessarily fatal to class certification. Olden , 383 F.3d at 509 ; Sterling , 855 F.2d at 1197. And "courts can often bifurcate class action proceedings, adjudicating liability on a classwide basis and then if liability is found, the issue of damages can be decided ... by another method." Cochran , 2008 WL 4146383 at *12 (internal quotation marks and citation omitted). But it is certainly an important factor when considering whether common issues and facts predominate.
*118 When combined with a need for individualized determinations of causation and even impact questions, it is within the circuit court's discretion to determine that common questions do not predominate. And in contrast to CR 23.01 's commonality requirement, CR 23.02(c) 's predominance criterion is far more demanding. Windsor , 521 U.S. at 624, 117 S.Ct. 2231.
We simply cannot say the circuit court abused its discretion in finding common questions of law or fact did not predominate over individual issues. The circuit court's concerns are well founded and reasonable. And failure to satisfy a CR 23.02 criterion is fatal to formation of the class.
CONCLUSION
While we disagree with much of the circuit court's analysis, we cannot say it abused its discretion in finding Appellants failed to demonstrate common questions predominate over individual issues. Accordingly, we affirm the Jefferson Circuit Court's November 3, 2016 order denying Appellants' motion for class certification.
ALL CONCUR.

Kentucky Rules of Civil Procedure.

After the parties had filed their briefs, the Kentucky Supreme Court rendered Hensley v. Haynes Trucking, LLC , 549 S.W.3d 430 (Ky. 2018). The parties were ordered to supplement their briefs with arguments regarding the impact of Hensley , if any, on analysis of this case.

"It is well established that Kentucky courts rely upon Federal case law when interpreting a Kentucky rule of procedure that is similar to its federal counterpart." Curtis Green & Clay Green, Inc. v. Clark , 318 S.W.3d 98, 105 (Ky. App. 2010). Federal Rule of Civil Procedure 23 is the federal counterpart of CR 23, and is similar. Thus, federal case law is persuasive in interpreting CR 23.

We are not deprived of jurisdiction to entertain this appeal despite its interlocutory nature. See CR 23.06.

This argument also touches upon the question whether putative class members with minimal or limited exposure to the soot, ash and other particulate matter should be prevented from qualifying as class members. However, we address this issue simply by quoting our Supreme Court:
Deciding this issue effectively decides the merits of those plaintiffs' claims.
Determining whether Hensley can proceed with a class-action lawsuit is not a determination about whether certain substantive, on-the-merits arguments, are meritorious; rather, such a determination is whether the suit can proceed as a class action. The potential application of the de minimis limitation is a proper consideration for the trial court in determining whether the class-certification requirements are satisfied. But appellate courts on interlocutory appeal cannot reach and conclusively determine a substantive issue that reaches the merits of a case when simply reviewing the propriety of the trial court's class-action certification determination.
Hensley , 549 S.W.3d at 441-42 (citations omitted).

In its recent decision on class actions, the Supreme Court said: "The U.S. Supreme Court in Wal-Mart Stores, Inc. v. Dukes highlighted the focus of the commonality question: Whether the class plaintiffs' claims 'depend upon a common contention ... that is capable of class wide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.' This Court has also expounded on the commonality requirement: 'CR 23.01(b) requires that there must be questions of law or fact common to the class, but it does not require that all questions of law or fact be common.' " Hensley , 549 S.W.3d at 443 (footnotes omitted).