RENDERED:  JULY 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1500-ME

AT&T CORP. AND BELLSOUTH
TELECOMMUNICATIONS, LLC                                    APPELLANTS


v.          APPEAL FROM FRANKLIN CIRCUIT COURT
            HONORABLE THOMAS D. WINGATE, JUDGE
                   ACTION NO. 16-CI-00986


DONNA FELTNER, ON BEHALF OF
HERSELF AND A CLASS OF
SIMILARLY SITUATED
INDIVIDUALS                                                 APPELLEES


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  ACREE, CALDWELL, AND LAMBERT, JUDGES.

CALDWELL, JUDGE:  Appellants AT&T Corp. and BellSouth

Telecommunications, LLC (collectively, "AT&T") appeal the Franklin Circuit

Court order granting Appellee Donna Feltner's ("Feltner") motion for class

certification.  Following a careful review of the record and the law, we vacate and

remand.

## BACKGROUND

As part of its vast telecommunications network, AT&T maintains several outdoor service terminals across the Commonwealth. AT&T's telecommunications equipment is often located on property owned or leased by third parties. For AT&T to access and service its equipment, the company must possess easements on many of these properties. One such easement is on located Feltner's real property in New Castle, Kentucky.

The central issue in this case surrounds AT&T's use of a pesticide known as "Rainbow Weed Killer." To prevent its service terminals from being damaged and its technicians from being harmed by the overgrowth of weeds around the terminals, AT&T allowed its technicians to apply Rainbow Weed Killer to the areas around the equipment.

In June of 2015, Feltner notified AT&T that several plants in her garden on her property, which was near AT&T's service terminal, were dying. AT&T sent Mark Bullock, an area manager in AT&T's Corporate Environment Health and Safety Field Support division, to inspect the area. Bullock observed some distressed areas surrounding AT&T's telephone equipment, but he noticed no areas of distress in Feltner's garden.[1]

---

[1] Bullock testified to these facts in a deposition on September 29, 2017. Bullock also testified—and AT&T noted in its brief—that an environmental consultant, Adam Flegge, tested the soil on Feltner's property for potential contamination and found no evidence of pesticide contamination

Feltner contacted the Kentucky Department of Agriculture regarding the alleged damage to her property from the pesticides applied by AT&T. Representatives from the Department collected and analyzed soil samples from Feltner's property and determined that two active ingredients in Rainbow Weed Killer were in fact present in the soil. The Department's inspector also observed that the amount of Rainbow Weed Killer detected was more than was appropriate for the tested area. As a result of its investigation, the Department of Agriculture issued two notices of violation to AT&T: one for failure to obtain a license to use pesticides in violation of Kentucky Revised Statutes (KRS) 217B.120(17), and one for failure to use pesticides as directed on their warning label in violation of KRS 217B.120(2).

On September 15, 2016, Feltner filed a class action lawsuit against AT&T, alleging that she and a class of similarly situated individuals had suffered property damage as a result of AT&T's use of Rainbow Weed Killer. The five-count complaint included claims against AT&T for nuisance, trespass, negligence, negligence *per se*, and strict liability. Feltner then moved for class certification, and by order entered on November 16, 2020, the circuit court granted Feltner's class-certification motion. AT&T appealed.

---

in the soil samples taken from Feltner's garden. However, there is no evidence in the record of Flegge's official credentials, his own deposition testimony, or his alleged report.

## STANDARD OF REVIEW

We review a trial court's decision to certify a class for an abuse of discretion. *Sowders v. Atkins*, 646 S.W.2d 344, 346 (Ky. 1983). Under an abuse of discretion standard, this Court may reverse a trial judge's decision only if the decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (citation omitted). Moreover, in our review, we may only address certification of the class, and we cannot make a conclusive determination on the merits.

> Because of the strict parameters of interlocutory appeals, the only question this Court may address today is whether the trial court properly certified the class to proceed as a class action lawsuit. We must focus our analysis on this limited issue [of class certification] and in so doing scrupulously respect the limitations of the crossover between (1) reviewing issues implicating the merits of the case that happen to affect the class-certification analysis and (2) limiting our review to the class-certification issue itself. Most importantly, "As the certification of class actions . . . is procedural, such process cannot abridge, enlarge, or modify any substantive right of the parties." "The right of a litigant to employ the class-action mechanism . . . is a procedural right only, ancillary to the litigation of substantive claims."

*Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 436-37 (Ky. 2018) (footnote omitted).

## ANALYSIS

On appeal, AT&T argues that the circuit court abused its discretion in certifying the class for two main reasons: (1) the proposed class is an impermissible fail-safe class; and (2) the proposed class does not meet the requirements under Kentucky Rules of Civil Procedure (CR) 23.01 and 23.02.

A "fail-safe" class is a class that cannot be defined until the case is resolved on its merits; it bases its membership not on objective criteria, but on the legal validity of each member's claim. *Manning v. Liberty Tire Services of Ohio, LLC*, 577 S.W.3d 102, 110 (Ky. App. 2019). "By its very nature, a fail-safe class includes *only* those who are *entitled* to relief." *Id*. at 110-11 (internal quotation marks and citations omitted). That is, the class definition "predicates inclusion of class members on the ultimate finding of liability that the court must make." *Hensley*, 549 S.W.3d at 449.

In *Hensley*, the Kentucky Supreme Court examined the appellant's claim that the circuit court had certified an improper fail-safe class. *Id*. at 449-50. There, the circuit court certified a class of plaintiffs as follows:

> All persons who were employed by Haynes Trucking, at any time since 1995, who have not been paid prevailing wages or proper overtime but who transported asphalt, gravel, sand and/or other road building materials to various locations on the site of public works projects in the Commonwealth, distributed road building materials from the truck bed in a controlled manner on the site of the project, unloaded asphalt directly into paving

-5-

machinery at a specific regulated rate so that such machinery could lay asphalt concurrently on the site of the project, and/or loaded recyclable and non-recyclable materials in conjunction with other heavy machinery for removal of the same from the site of the project.

*Id*. at 435-36. The Court's discussion on whether the class definition was fail-safe

is instructive:

> Hartford also alleged that the class definition was an improper "fail-safe" definition, as the Sixth Circuit has articulated. But Hartford misunderstands what a "fail-safe" class is. The Sixth Circuit in [*Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011)] found an abuse of discretion in the trial court's initial class definition, which included "[a]ll persons who . . . were entitled to receive [a certain insurance rate]." Defining the class in such way was improper because it "shields the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment."
>
> Essentially, a fail-safe class is one that predicates inclusion of class members on the ultimate finding of liability that the court must make. The class definition in this case is not fail-safe. To be fail-safe, the definition in this case needed to have said something akin to, "All truck drivers who are entitled to the prevailing wage." The trial court's class definition makes no statement as to whether the truck drivers are entitled to the prevailing wage, which is the ultimate liability determination it must make. The current class definition only includes those truck drivers "not . . . paid the prevailing wage." Such a statement affords class membership and the ability to pursue a claim for the prevailing wage to those truckers who were not paid the prevailing wage on the jobsite—it *does not say one way or the other* whether those who

-6-

pursue a claim for the prevailing wage are entitled to that wage.

*Id.* at 449-50 (footnotes omitted) (emphasis added). Since the decision in *Hensley*, this Court has entertained arguments regarding fail-safe classes several times. *See, e.g.*, *Compliance Advantage, LLC v. Criswell*, No. 2019-CA-0872-ME, 2020 WL 2510913, at *4 (Ky. App. May 15, 2020) (citation omitted) (holding that a class definition comprised of individuals who received false laboratory reports was not fail-safe because "[b]y merely receiving a false laboratory report, the class member is not automatically entitled to recover on the claims set forth against appellants. Rather, individuals who have received false laboratory results are included in the class and can pursue class action tort claims against appellants."); *Hitachi Auto. Sys. Americas, Inc. v. Held*, No. 2019-CA-1318-ME, 2020 WL 2510534, at *3 (Ky. App. May 15, 2020) (holding that the class definition was not fail-safe because it included "all supervisors who worked at the Hitachi facility during the relevant time and is not dependent on ultimate liability."); *Sullivan Univ. Sys., Inc. v. McCann*, No. 2020-CA-0118-ME, 2020 WL 5587316, at *2 (Ky. App. Sep. 18, 2020) (holding that a class definition that included all supervisors who worked for the defendant as admissions officers during the relevant time period was not fail-safe, as it was not dependent on ultimate liability).

In *Manning*, residents of a neighborhood located near a tire recycling facility filed a class action against the owner and tenants of the facility, alleging

that their reckless, intentional, and negligent conduct in allowing tires to burn caused substantial damages to the named plaintiffs and members of a putative class. 577 S.W.3d at 108. The plaintiffs sought certification of the following two subclasses:

> All persons whose dwelling was within an area approximately one mile from the tire fire at 14201 Bohannon Avenue, Louisville, Kentucky, and was subject to a Shelter in Place Order between November 3, 2014 and November 4, 2014.
>
> All persons or property owners on whose property the tire fire at Liberty Tires caused soot, ash, smoke, or other physical remnants to land on November 3 and/or November 4, 2014.

*Id*. at 110. Although the circuit court denied class certification on other grounds, the appellees argued on appeal that the proposed class definitions were impermissibly fail-safe. We held that the class definitions were sufficiently defined as to not constitute a fail-safe class. "Stated another way, the class definition does not hinge on a 'fail-safe' definition that requires a merit-based analysis before membership can be determined. Class members need only reside in the one-mile [Shelter In Place] radius, or in the smoke plume radius as modeled by Appellants' expert, or both. Indeed, Appellees make much of the fact that some of the putative class members experienced little or to no harm as a result of the [Shelter In Place] order or the smoke plume." *Id*. at 111.

-8-

In the present case, Feltner's proposed class definition was "[a]ll real property owners in the Commonwealth of Kentucky on whose real property Defendants committed trespass, nuisance and/or negligent property damage due to the unlawful use of Rainbow Weed Killer pesticides." We must determine whether membership in the proposed class is "dependent on whether a person holds a valid legal claim." *Manning*, 577 S.W.3d at 111. We hold that the proposed class definition is fail-safe because it inevitably bases membership on the merits of each individual's claim.

Feltner argues that the proposed class definition here is akin to the permissible language in *Hensley* because the class is defined as real property owners against whom AT&T "committed trespass, nuisance, and/or negligent property damage," rather than those "entitled to compensation" due to the alleged commission of those torts. However, either variation requires each individual class member to prove, on the merits, that AT&T committed a tort against him and that he is entitled to compensation as a result.

The circuit court must ultimately determine whether AT&T committed the torts of trespass, nuisance, and/or negligent property damage against each individual class member. The current class definition not only affords class membership and the ability to pursue such claims, it presupposes whether those who pursue a claim are entitled to damages. *Hensley*, 549 S.W.3d at 450. To

qualify as a class member, individuals must own real property on which AT&T committed certain torts. The ownership of such real property as a requisite for class membership implies that class members are not only entitled to pursue those tort claims, but are entitled to recover on those tort claims.

As currently articulated, whether an individual is a member of the class is predicated on the ultimate finding that AT&T committed the torts of trespass, nuisance, and/or negligent property damage. Therefore, we hold that this is an impermissible fail-safe class.

Accordingly, the class certification order of the Franklin Circuit Court is vacated, and this matter is remanded for further proceedings consistent with this Opinion. Because we vacate the circuit court's order on this basis, we do not reach AT&T's remaining contentions of error.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEES: |
|---|---|
| W. Blaine Early, III<br>Marshall R. Hixson<br>Lexington, Kentucky | Jasper D. Ward IV<br>Alex C. Davis<br>Sean A. McCarty<br>Randal A. Strobo |
| Marjorie A. Farris<br>Chadwick A. McTighe<br>Louisville, Kentucky | Clay A. Barkley<br>Louisville, Kentucky |
| Clifford J. Zatz<br>Washington, D.C. | |