RENDERED: OCTOBER 6, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0051-ME

AT&T CORP. AND BELLSOUTH
TELECOMMUNICATIONS, LLC                                      APPELLANT


                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE THOMAS D. WINGATE, JUDGE
                    ACTION NO. 16-CI-00986


DONNA FELTNER, ON BEHALF
OF HERSELF AND A CLASS OF
SIMILARLY SITUATED
INDIVIDUALS                                                  APPELLEE


OPINION
AFFIRMING IN PART, VACATING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND McNEILL, JUDGES.

KAREM, JUDGE: AT&T Corp. and BellSouth Telecommunications LLC

(collectively "AT&T") appeal from a Franklin Circuit Court order granting the

appellee Donna Feltner's petition for class certification. The underlying case

involves AT&T's application of weed killer around its service terminals. The circuit court had granted a previous petition for class certification which was vacated by a panel of this Court on the grounds that Feltner had improperly sought a "fail-safe" class. *See AT&T Corp. v. Feltner*, No. 2020-CA-1500-ME, 2021 WL 2753980 (Ky. App. Jul. 2, 2021). Upon remand, Feltner amended her complaint to alter the description of the putative class and filed a second petition for class certification, which the circuit court granted. Upon careful review, we conclude that the class certified by the circuit court is not improperly "fail-safe," and affirm that part of its order. The circuit court did not, however, make several findings mandated by Kentucky Rules of Civil Procedure ("CR") 23; therefore, we must vacate the remainder of its order and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of the case were set forth in our prior opinion:

As part of its vast telecommunications network, AT&T maintains several outdoor service terminals across the Commonwealth. AT&T's telecommunications equipment is often located on property owned or leased by third parties. For AT&T to access and service its equipment, the company must possess easements on many of these properties. One such easement is . . . located [on] Feltner's real property in New Castle, Kentucky.

The central issue in this case surrounds AT&T's use of a pesticide known as "Rainbow Weed Killer." To prevent its service terminals from being damaged and its technicians from being harmed by the overgrowth of

-2-

weeds around the terminals, AT&T allowed its technicians to apply Rainbow Weed Killer to the areas around the equipment.

In June of 2015, Feltner notified AT&T that several plants in her garden on her property, which was near AT&T's service terminal, were dying. AT&T sent Mark Bullock, an area manager in AT&T's Corporate Environment Health and Safety Field Support division, to inspect the area. Bullock observed some distressed areas surrounding AT&T's telephone equipment, but he noticed no areas of distress in Feltner's garden.

Feltner contacted the Kentucky Department of Agriculture regarding the alleged damage to her property from the pesticides applied by AT&T. Representatives from the Department collected and analyzed soil samples from Feltner's property and determined that two active ingredients in Rainbow Weed Killer were in fact present in the soil. The Department's inspector also observed that the amount of Rainbow Weed Killer detected was more than was appropriate for the tested area. As a result of its investigation, the Department of Agriculture issued two notices of violation to AT&T: one for failure to obtain a license to use pesticides in violation of Kentucky Revised Statutes (KRS) 217B.120(17), and one for failure to use pesticides as directed on their warning label in violation of KRS 217B.120(2).

On September 15, 2016, Feltner filed a class action lawsuit against AT&T, alleging that she and a class of similarly situated individuals had suffered property damage as a result of AT&T's use of Rainbow Weed Killer. The five-count complaint included claims against AT&T for nuisance, trespass, negligence, negligence *per se*, and strict liability. Feltner then moved for class certification, and by order entered on November 16, 2020, the circuit court granted Feltner's class-certification motion.

*Feltner*, 2021 WL 2753980, at *1 (footnote omitted).

AT&T appealed. In its opinion rendered on July 2, 2021, a panel of this Court vacated the circuit court's order for certifying an improper "fail-safe" class. Feltner thereafter filed an amended complaint with an amended definition of the class with a second petition seeking class certification. The circuit court granted her petition and this second appeal by AT&T followed.

## STANDARD OF REVIEW

This interlocutory appeal is permitted under CR 23.06, which states: "An order granting or denying class action certification is appealable within 10 days after the order is entered." Because this is an interlocutory appeal, our review is limited solely to the issue of class certification; it cannot extend to evaluating the merits of the underlying case. *Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 436 (Ky. 2018). "Merits questions may be *considered* to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. at 437 (emphasis in original) (citations omitted). Consequently, "[t]he determination [of] whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." *Id*. (citations omitted).

-4-

AT&T argues that (1) the circuit court failed to make several statutorily mandated findings; (2) the findings it did make were inadequate; and (3) it yet again certified an improper fail-safe class.

We review the circuit court's decision to grant class certification for an abuse of discretion. *Hensley*, 549 S.W.3d at 444. "The test for abuse of discretion is whether the trial [court's] decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## ANALYSIS

### i. The class definition is not "fail-safe"

Before addressing AT&T's arguments regarding the adequacy of the circuit court's findings pursuant to CR 23, we must address the "initial, potentially dispositive consideration," which is whether the circuit court again improperly approved a fail-safe class. *Manning v. Liberty Tire Services of Ohio, LLC*, 577 S.W.3d 102, 110 (Ky. App. 2019). "[T]he definition of the class is an essential prerequisite to maintaining a class action." *Id.* (citation omitted).

"[T]he definition of a 'fail-safe' class is a class that cannot be defined until the case is resolved on its merits. It bases its membership not on objective criteria, but on the legal validity of each member's claim. . . . By its very nature, a fail-safe class includes *only* those who are *entitled* to relief." *Id.* at 110-11

-5-

(internal quotation marks and citations omitted).  The reason for prohibiting such a class is that "it would allow putative class members to seek a remedy but not be bound by an adverse judgment – either those class members win or, by virtue of losing, they are not in the class and are not bound." *Id.* at 111 (internal quotation marks and citations omitted).  "Moreover, by [u]sing a future decision on the merits to specify the scope of the class, a fail-safe class definition makes it impossible to determine who [is] in the class until the case ends." *Campbell v. National Railroad Passenger Corporation*, 311 F. Supp. 3d 281, 313 (D.D.C. 2018) (internal quotation marks and citations omitted).

In her original complaint, Feltner's proposed class definition was "[a]ll real property owners in the Commonwealth of Kentucky on whose real property Defendants committed trespass, nuisance and/or negligent property damage due to the unlawful use of Rainbow Weed Killer pesticides." *Feltner*, 2021 WL 2753980, at *3.  In the first appeal, this Court held that this was an improper "fail-safe" class definition because membership was "predicated on the ultimate finding that AT&T committed the torts of trespass, nuisance, and/or negligent property damage." *Id.* at *4.  The class definition not only "afford[ed] class membership and the ability to pursue such claims, it presuppose[ed] whether those who pursue a claim are entitled to damages." *Id*.

Feltner's amended complaint defines the class as "[i]n the Commonwealth of Kentucky, all owners whose real property contains Rainbow Weed Killer pesticide as a result of Defendants' application of the Rainbow Weed Killer pesticide."

In its motion opposing class certification, AT&T acknowledged that while the new definition was "no longer overtly framed in terms of a completed tort by AT&T," it nonetheless still required the court "to determine a core merits component of each putative class member's claim – whether AT&T contaminated their properties – to determine who is in the class." In its brief, AT&T expands on this argument, contending that the definition is fail-safe because it requires a showing of the proof of the essential elements of tort liability – injury and causation – because the putative class member must own property on which Rainbow Weed Killer is not only present, but is present as a result of AT&T's application of the herbicide.

We look for guidance to *Manning*, in which a class action was brought after a massive fire at a tire recycling facility deposited soot, ash, and other particulate matter on surrounding neighborhoods. Air monitoring showed high levels of harmful particulate matter in the area, exceeding health guidelines and a Shelter-in-Place order was issued for persons living within a one-mile radius of the fire. *Manning*, 577 S.W.3d at 108.

The appellants sought certification of the following two subclasses, the second of which closely mirrors the one at issue in the present case:

> All persons whose dwelling was within an area approximately one mile from the tire fire at 14201 Bohannon Avenue, Louisville, Kentucky, and was subject to a Shelter in Place Order between November 3, 2014 and November 4, 2014.

> All persons or property owners on whose property the tire fire at Liberty Tires caused soot, ash, smoke, or other physical remnants to land on November 3 and/or November 4, 2014.

*Id.* at 110.

*Manning* held that these definitions did not constitute impermissible fail-safe classes because membership, by definition, was not dependent on whether a person held a valid legal claim:

> Stated another way, the class definition does not hinge on a "fail-safe" definition that requires a merit-based analysis before membership can be determined. Class members need only reside in the one-mile SIP radius, or in the smoke plume radius as modeled by Appellants' expert, or both. Indeed, Appellees make much of the fact that some of the putative class members experienced little or to no harm as a result of the SIP order or the smoke plume. . . . [Appellants'] classes will include both those entitled to relief and those not. [Appellees'] other argument – that they are not ultimately liable for many of the class members, even if they were incorrectly charged – proves the point.

*Id.* at 111 (internal quotation marks and citation omitted).

Similarly, in this case, class members need only own property on which AT&T technicians applied Rainbow Weed Killer. Class members are not required to show any damages; indeed, many of them may have suffered no harm whatsoever as a result of the application of the weed killer, which, as in *Manning*, proves the point that it is not a fail-safe class. As the circuit court's order aptly states, "whether an individual is a member of the class is not predicated on any findings that AT&T committed torts of trespass, nuisance and/or negligent property damage."

This point is illustrated by a comparison with the class definition in *Burkhead v. Louisville Gas & Electric Company*, 250 F.R.D. 287, 290 (W.D. Ky. 2008), an opinion relied upon by AT&T. The plaintiffs in that case sought damages for allegedly noxious emissions from a power plant. The class definition limited membership to

> Owners or residents of single family residences within two miles of the LG & E Cane Run facility, whose property was damaged by noxious odors, fallout, pollutants and contaminants which originated from the LG & E Cane Run facility located in Louisville, Kentucky and who have owned or resided at that single family residential home from May 9, 2003 to the present and continuing.

*Burkhead*, 250 F.R.D. at 290.

The federal district court expressed reservations about the definition because it seemed "to make the ultimate issue in the case (property damage at the

hands of LG&E) a component of the class *definition*, thereby front-loading the individualized damage determinations which ordinarily would be reserved until later in the proceedings." *Id.* at 294. But Feltner's definition does not require an individualized damage assessment in order for an individual to qualify as a class member.

This distinction was elucidated by the Sixth Circuit Court of Appeals in a seminal case involving a class action suit against an insurance company for overcharging taxes on premiums. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012). The class was defined as

> All persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by [Defendant insurer] during the Relevant Time Period [ (June 16, 2001, through the present) for 06-141 and (June 22, 2001, through the present) for 06-146] and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted.

*Id.* at 536.

The insurer argued "that the determination of whether premium taxes were charged that were not owed or were at rates higher than permitted goes to the heart of the claims and impermissibly determines a required element of each claim against them." *Id.* at 538. The appellate court disagreed, stating:

> [A] "fail-safe" class is one that includes *only* those who are *entitled* to relief. Such a class is prohibited because it would allow putative class members to seek a remedy but

not be bound by an adverse judgment – either those "class members win or, by virtue of losing, they are not in the class" and are not bound. Such a result is prohibited in large part because it would fail to provide the final resolution of the claims of *all* class members that is envisioned in class action litigation. Plaintiffs' classes will include both those entitled to relief and those not. . . . This is not a proscribed fail-safe class.

*Id.* at 538 (citation omitted).

For illustrative purposes only, we cite our opinion in *Compliance Advantage, LLC v. Criswell*, No. 2019-CA-000872-ME, 2020 WL 2510913 (Ky. App. May 15, 2020), in which the class was defined as "those individuals who have received false laboratory reports or results from [appellants] through the business of Counselor's Clinical Cottage." *Id.* at *3. The Court concluded that it was not a "fail-safe" class because "[b]y merely receiving a false laboratory report, the class member is not automatically entitled to recover on the claims set forth against appellants. Rather, individuals who have received false laboratory results are included in the class and can pursue class action tort claims against appellants." *Id.* at *4 (citation omitted).

In light of the foregoing precedent, we affirm the circuit court's ruling that Feltner's amended class definition is not improperly fail-safe.

**ii. The circuit court's order does not comply with the statutory framework of CR 23**

Class action certification is governed by CR 23.01 and CR 23.02. "Taken together, the rules provide a comprehensive roadmap to class certification. The mandates of both rules must be satisfied before a class may be certified. The party seeking certification bears the burden of proof." *Manning*, 377 S.W.3d at 110 (citation omitted).

CR 23.01 provides that:

> Subject to the provisions of [CR] 23.02, one or more members of a class may sue or be sued as representative parties on behalf of all only if (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class.

These four elements of CR 23.01 are often summarized as numerosity, commonality, typicality, and adequacy of representation. *Hensley*, 549 S.W.3d at 442-43. If all four elements are not present, the circuit court cannot certify the class. *United Propane Gas, Inc. v. Purcell*, 533 S.W.3d 199, 203 (Ky. App. 2017).

If the four requirements under CR 23.01 are met, the circuit court must proceed to consider whether the requirements of CR 23.02 are met by finding one of the following:

(a) The prosecution of separate actions by or against individual members of the class would create a risk of

(i) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or,

(ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(b) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(c) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (iv) the difficulties likely to be encountered in the management of a class action.

CR 23.02.

"If none of the three [CR 23.02 (a),(b), or (c)] is satisfied, the court must deny class certification; if at least one condition is satisfied, the court may certify the class." *Purcell*, 533 S.W.3d at 203.

Finally, the circuit court "must determine by order whether to certify the action as a class action." CR 23.03. In that order, the circuit court "*must* define the class and the class claims, issues, or defenses, and must appoint class counsel under CR 23.07." CR 23.03(2) (emphasis added). The circuit court's determination that the prerequisites of CR 23.01 have been met must be supported by adequate findings. *Purcell*, 533 S.W.3d at 203. "The United States Supreme Court has held that a class action 'may only be certified if the trial court is satisfied, after a *rigorous analysis*, that the prerequisites of [CR 23.01] have been satisfied.' To do so, it may be necessary for the circuit court to 'probe behind the pleadings before coming to rest on the certification question.'" *Id*. (emphasis in the original).

In its order, the circuit court held that the numerosity requirement of CR 23.01 was met, based on its finding that AT&T technicians had ordered Rainbow Weed Killer for delivery to work centers located in over thirty cities across the state of Kentucky. The circuit court noted that each work center covers a surrounding geographic area, making the total number of class members more than thirty, with some work centers covering highly populated areas such as

Paducah, Louisville, and Pikeville. The circuit court also relied on AT&T records showing that almost 13,000 pounds of Rainbow Weed Killer were delivered to these thirty centers from 2012 to 2016, including more than 2,800 pounds to Frankfort alone. Relying on the statement that the numerosity analysis must focus on the impracticability of joinder the trial court concluded that "Given the wide distribution of Rainbow Weed Killer by AT&T technicians, joinder of all members would be impracticable without class certification."

The circuit court also held that the proposed class met the commonality requirement, stating:

> Plaintiff's proposed class consists of all owners whose real property contains Rainbow Weed Killer. In each instance, the same fact situation would be presented and, as a result of that use of Rainbow Weed Killer, potential plaintiffs would pursue the same legal theory to present his or her case. The questions are readily capable of class-wide resolution because they cut to Defendants' uniform course of conduct in applying Rainbow Weed Killer throughout Kentucky.

The circuit court did not, however, mention or make any findings regarding the elements of typicality and adequacy of representation under CR 23.01.

The circuit court also did not adequately specify which section of CR 23.02 is applicable to the case. Feltner sought certification under CR 23.02(b) or (c). The order quotes CR 23.02(b) but does not affirmatively state that this is the

-15-

applicable alternative or make any findings to support such a determination. "The necessity of distinguishing under which sub-part of CR 23.02 the class is certified is more than just a mere formality. The notice the circuit court must send to prospective class members differs depending on whether the class is certified under CR 23.02(a), (b), or (c). *See* CR 23.03(4)(a) and (b)." *Purcell*, 533 S.W.3d at 203.

Finally, the order does not fully comply with CR 23.03(2), which states that "[a]n order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under CR 23.07." CR 23.03(2). The circuit court's order approves the class definition, but does not define class claims, issues, or defenses except in its discussion of the commonality requirement. The order does not appoint class counsel.

The order is not adequate to support class certification because it does not contain complete findings of fact as mandated by CR 23.01, does not specify which section of CR 23.02 is applicable, and does not comply with CR 23.03. We have not reviewed the circuit court's findings as to numerosity and commonality under CR 23.01 in order to avoid piecemeal or inconsistent results. "[B]ecause the typicality, commonality, and adequacy prongs overlap in analysis," the circuit court "should revisit all prongs on remand to determine whether to certify a class." *Nebraska Alliance Realty Company v. Brewer*, 529 S.W.3d 307, 315 (Ky. App. 2017).

## CONCLUSION

The circuit court's holding that Feltner's definition of the putative class does not violate the prohibition against fail-safe classes is affirmed. In all other respects, its order is vacated. The case is remanded for the circuit court to make complete findings under the four elements of CR 23.01 and, if these findings support class certification, proceed to comply with the requirements of CR 23.02 and CR 23.03.


ALL CONCUR.


BRIEFS FOR APPELLANTS:

W. Blaine Early, III
Marshall R. Hixson
Lexington, Kentucky

Marjorie A. Farris
Chadwick A. McTighe
Louisville, Kentucky

Clifford J. Zate, *pro hac vice*
Washington, D.C.

BRIEF FOR APPELLEE:

Jasper D. Ward IV
Alex C. Davis
Louisville, Kentucky

Randal A. Strobo
Clay A. Barkley
Timothy J. Mayer
Louisville, Kentucky